AGNES STEWART, Respondent, v. SUPREME COUNCIL, AMERICAN LEGION OF HONOR, Appellant.

### St. Louis Court of Appeals, May 14, 1889.

1. **Benevolent Societies:** CERTIFICATE: EVIDENCE: PRACTICE: NON-SUIT. The benefit certificate of a deceased member is *prima facie* evidence that he was in good standing at the time of his death; and when, in addition to such evidence, the beneficiary plaintiff offers to prove the member's death, the plaintiff can not be non-suited.

2. ———. Evidence offered by the plaintiff to show that the defendant declined to receive proof of the death of the member, because of his alleged suspension, is not, when introduced by the plaintiff, to be regarded as proof of the suspension, but only as showing the defendant's waiver of proofs of death.

3. ———. Under such proof there is no error in the court's refusal to grant a non-suit on the ground that the plaintiff failed to show that the suspension was wrongful or that the deceased member was reinstated.

4. ———: CASE ADJUDGED. Where the non-payment of the assessment is undisputed, and the chief question in issue is that of due notice of the assessment in accordance with the laws of the society, a manifest disregard by the court of evidence tending to show that notice was mailed to the same address from which the member had repeatedly responded previously, that the suspension was made after the required lapse of time, the member's admissions of his knowledge thereof, and his declarations of his disconnection from the society tending to show the waiver of personal notice, is erroneous.

*Appeal from the St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Geo. H. Shields*, and *F. H. Bacon*, for the appellant.

Ordinarily the plaintiff makes out a case by offering the benefit certificate which recites that the member was at the time of its issue in good standing, as this *status* once fixed is presumed to continue. *Mulroy v. Knights of Honor*, 28 Mo. App. 468; *Ziegler v. Aid Ass'n*, 1 McGloin (La.) 284; *Knights of Honor v. Johnson*, 78 Ind. 110. But in this case plaintiff showed affirmatively that Hugh Stewart had become suspended four months before his death and was therefore not in good standing. The court will not presume that such suspension was illegal. In *Bachmann v. Deutcher Arbeiter Bund*, 64 How. Pr. 447, the court says: "Every presumption is in favor of the fairness of the expulsion of a member in a proceeding instituted and carried on by fellow-members." *Shannon v. Frost*, 3 B. Mon. 259; *Harmon v. Dreher*, 1 Spear's Eq. 87. Since the plaintiff showed that at the time of his death Hugh Stewart was out of the order, having become suspended, she should have gone on and showed the suspension unlawful and thus gotten the member back into the order. *Siebert v. Chosen Friends*, 23 Mo. App. 268; *Mills v. Rebstock*, 29 Minn. 380. The meaning of the word notify, according to Webster's Dictionary, is: "To make known; to declare; to publish; often with to, as to notify a fact to a person." In *Siebert v. Chosen Friends*, 23 Mo. App. 272, the meaning of the word is given as "inform." So in *Castner v. Farmers*, 50 Mich. 277. It was enough to mail a notice where the law provided that "the secretary shall cause a notice to be sent to the last post-office address of every member" though it was not

received. See *Weakly v. Aid Ass'n*, 19 Bradw. 327; *Greely v. Ins. Co.*, 50 Ia. 86; *Ins. Co. v. Knight*, 48 Me. 75. See *Borgraefe v. Knights and Ladies of Honor*, 22 Mo. App. 127, where, under the laws of the order, mailing was sufficient. The mail service in this modern age is so perfect that if it be shown that a letter has been duly mailed a presumption at once arises that it was duly received. We claim that having shown that the notice was mailed to Hugh Stewart a presumption arose that such notice was received, which presumption the plaintiff was bound to overcome by proof. In *Hollister v. Ins. Co.*, 118 Mass. 481, it was the usage in this council and in the order to give notice by mail, and Stewart expressly agreed to conform to all the usages of the order. *Dilleber v. Ins. Co.*, 76 N. Y. 567; *Gunther v. New Orleans Ass'n*, 5 South. 65; *Fitzpatrick v. Ins. Co.*, 25 La. Ann. 444; *Dial v. Ins. Co.*, S. C. 27–35. It was admissible to show that he had in fact received notice. The defendant relies on the following cases to sustain his point: *Leczensky v. Knights of Honor*, 31 Fed. Rep. 595; *Supreme Lodge v. Schmidt*, 98 Ind. 378; *Dodge v. Bank*, 93 U. S. 379; *Reid v. Ins. Co.*, 58 Mo. 425; *Evers v. Life Ass'n*, 59 Mo. 429. The beneficiary in this case had no possible property or legal interest in this certificate or benefit until after the death of Hugh Stewart, who while he lived was the sole party in interest, and these declarations were made before that interest ceased. *Holland v. Taylor*, 111 Ind. 606; *Swift v. Railroad*, 96 Ill. 309: *Barton v. Bank*, 63 N. H. 535.

*Thomas B. Estep* and *Louis A. Steber*, for the respondent.

With the introduction of the benefit certificate, filing same in court, proof of identity of the plaintiff as the beneficiary, proof of the death of Hugh Stewart,

son of the beneficiary and a member of the defendant, with an offer to make proofs of death, and an express waiver of such proofs by the defendant, the plaintiff has surely made a *prima facie* case, and the burden of overthrowing it rests with the defendant. *Mulroy v. Knights of Honor*, 28 Mo. App. 463 (467). That, in the absence of any other mode or manner of delivery of notice in a law or contract, personal notice is meant ; that is, notice in person to the party sought to be charged, is well-settled law. *Corneli v. Partridge*, 3 Mo. App. 575 ; *Ryan v. Kelly*, 9 Mo. App. 396 (398) ; *City of St. Louis v. Goebel*, 32 Mo. 295 ; *Allen v. Mfg. Co.*, 72 Mo. 326 (328) ; *Wachtel v. Soc'y.*, 84 N. Y. 28 ; *Rathbun v. Acker*, 18 Barb. 393 ; *McDermott v. Board of Police*, 25 Barb. 635 (646) ; *Pearson v. Lovejoy*, 53 Barb. 407. The notices not being mailed till March 1, 1885 (even if Stewart got one), he would have had forty days to pay it in, which would give him time to April 10, 1885. A declaration of suspension therefore on March 24, 1885, was premature, null and void. *Ins. Co. v. Palmer*, 81 Ill. 88 (93-95) ; *France v. Evans*, 90 Mo. 74 (77). The member is entitled to just the form and manner of notice prescribed by the laws of the society. *Siebert v. Order of Chosen Friends*, 23 Mo. App. 268. The statements made by the deceased to witnesses, Engelman and McGrady (received in evidence against plaintiff's objections) are inadmissible against plaintiff herein, and do not bind her in this proceeding. *Leczensky v. Knights of Honor*, 31 Fed. Rep. 592 (595) ; *Supreme Lodge v. Schmidt*, 98 Ind. 374 (378-9) ; *Dodge v. Bank*, 93 U. S. (3 Otto) 379 ; Bacon on Ben. Soc., sec. 460 ; *Reid v. Ins. Co.*, 58 Mo. 421 (425). They were (if anything) merely the expression of an opinion as to the legal right, rather than the statement of a fact. *Ins. Co. v. Booker*, 9 Tenn. 606 (620). It does not prove that he had notice of the assessment. *Pearson v. Lovejoy*, 53 Barb. 407 (410). Nor that it was in the form or

manner of notice that he had stipulated for in his contract with the society. *Siebert v. Chosen Friends*, 23 Mo. App. 268 (273). Plaintiff's interest legally did not take effect till Hugh Stewart died, and hence his admissions (if any) are not receivable in evidence against her. *Evers v. Life Ass'n*, 59 Mo. 429 (432); 1 Greenl. on Ev. (14 Ed.) sec. 176. The customs or usages of the order do not control. The terms of the express contract determine the rights of the parties. *Manson v. Grand Lodge*, 30 Minn. 509 (512).

ROMBAUER, P. J., delivered the opinion of the court.

The plaintiff sues the defendant, a beneficial corporation, incorporated under the laws of the state of Massachusetts, setting forth in her petition the objects of the incorporation, that it did business in the state through subordinate councils, and among others, established Lafayette Council, number 392, in the city of St. Louis, and that in October, 1883, the plaintiff's son, Hugh Stewart, became a beneficial member of the defendant order, in said Lafayette Council number 392, and received a benefit certificate, numbered 67,074, dated October 31, 1883, for two thousand dollars ($2,000), wherein and whereby the defendant agreed to pay the plaintiff herein, as the mother of said Hugh Stewart, said sum of two thousand dollars. That said Hugh Stewart died July 29, 1885, in good standing as a member of the defendant order and said Lafayette Council number 392, and that thereby the defendant became indebted to the plaintiff in the said sum of two thousand dollars, which, though demanded, it failed and still fails to pay. The plaintiff filed with said petition as forming a part thereof said benefit certificate, and asked judgment for two thousand dollars.

The defenses interposed may be summarized as follows

(1) That Hugh Stewart was not a member in good standing at the day of his death.

(2) That when he became a member, he agreed, and the certificate was issued to him upon the express condition, that he would make punctual payments of the dues and assessments for which he became liable, as a member, and to conform in all respects to the laws and usages of the order. That in accordance with the laws and constitution of the order an assessment known as assessment number 64 was properly made of which said Hugh Stewart was properly notified, and thereupon under such laws it became his duty to pay the same within forty days from date of notice. That he failed to do so and thereupon was suspended for that reason. That he had full knowledge of said suspension but never made application to be re-instated, as he might under the laws of the order. That he had thus failed to comply with the rules of the order, and was not at the date of his death a member in good standing, and the benefit certificate sued upon thereby became null and void.

(3) That although said Hugh Stewart lived for four months after said suspension, and although other assessments were laid upon him by the defendant order, he, well knowing that he was suspended, did not offer to pay the same.

(4) That the beneficiary had failed to make the proofs of death required by the laws of the order.

The answer was denied by reply.

Upon the trial, the plaintiff gave in evidence the application of Hugh Stewart for admission as a member. Such portions of the application as bear upon the present controversy are as follows:

" I do hereby consent that my suspension or expulsion from, or voluntarily severing my connection with the order, shall forfeit the rights of myself, and family, or dependants to all benefits and privileges therein. I

agree to make punctual payments of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules, and usages of the order now in force, or which might hereafter be adopted by the same."

Also the benefit certificate issued to said Hugh Stewart, of which the following portions bear upon the present controversy:

"This certificate is issued to Companion Hugh Stewart, a member of Lafayette Council, number 392, A. L. H., located at St. Louis, Missouri, upon evidence received from said council, that said companion is a third degree contributor to the benefit fund to this order, and upon condition that the statements made by said companion in application for membership in said council, and the statements certified by said companion to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said companion complies in the future with the laws, rules, and regulations now governing the said council and fund, or that may hereafter be enacted by said council and fund."

"These conditions being complied with, the supreme council of the A. L. H. hereby promises and binds itself to pay out of its benefit fund to Agnes Stewart, mother, a sum not exceeding five thousand dollars in accordance with, and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said companion and upon surrender of this certificate."

The plaintiff then offered in evidence a letter written by her counsel under date of January 9, 1888, to the supreme secretary of the American Legion of Honor, advising him that Hugh Stewart had died on July 29, 1885, a member of the order in good standing, and that his mother held his benefit certificate. The letter made inquiry whether the proofs of death should be made out

by the subordinate council, or whether proofs made by the writer would be satisfactory.

Also the answer of the supreme secretary, which informed such counsel that the member was suspended March 18, 1885, and was not therefore at the date of his death, July 29, 1885, a member in good standing, hence it was unnecessary to file proofs of death.

The plaintiff also introduced in evidence the laws of the order requiring the secretary of the subordinate lodge to prepare proofs of death. The plaintiff then gave evidence that in January, 1888, her counsel did apply to the secretary to make out such proofs; that the secretary declined, stating that the member had been suspended in 1885, but that the entire matter was referred to the supreme secretary, with a statement of the facts.

The plaintiff further proved that Hugh Stewart died July 29, 1885, leaving him surviving the plaintiff, who is the beneficiary in the certificate, and then rested.

The defendant demurred to this evidence by instruction, and, upon its demurrer being overruled, gave the following evidence in support of the answer.

It was admitted by the plaintiff that assessment number 64 was regularly made by the supreme officers, and that they notified the subordinate council of that fact. The secretary of Lafayette Council testified that he received notice of assessment 64, and it was read at a regular meeting of the council, February 10, 1885. That the date of the call was February 6, 1885. That at the meeting of March 24, 1885, a number of companions were announced suspended, and among them Hugh Stewart.

The collector of the council testified that it was his duty to send out notices of assessment to members. That the notice of this assessment read : "Companion, you are notified that assessment number 64 is now called, and must be paid within forty days from date." That they were printed on a postal card and contained

the words affixed by a rubber stamp, "Collector's stamp, Lafayette Council, number 392, A. L. H.," which was his official stamp. That when he received orders to give notice, he prepared and mailed them to all the members. That to the best of his knowledge he did so in this instance addressing Stewart at 1735 Lucas avenue, which was the address given on the book. That Stewart had responded to two previous assessment notices sent to him to the same address. That these notices, for assessment number 64, were sent out about March 1, 1885, probably before, witness did not remember the exact date. That he was fully satisfied every member got his notice. (This last statement was ruled out by the court.)

Henry Engelman testified that he met Hugh Stewart after October, 1884 (the date when witness himself left the order), although he could not fix the exact date, when the following passed between him and Stewart:

"I asked him how were the boys up at the council. He said, 'I don't know and I don't care, I dropped the damned thing,' or something to that effect. I can't say whether he said damned thing or dropped the thing; anyway he gave me to know that he didn't belong to the order any more. Q. Did he state to you why he had dropped them? A. He spoke to me about some sick benefits. Of course I was not in the order, I didn't know exactly of the sick benefits; what the sick benefits were he was claiming. He said a person couldn't get no sick benefits there; so he told me he dropped the order."

Hugh McGrady testified that he was commander of Lafayette Council number 392 in 1885; knew Stewart; can not give the date, but recollects while he was in the chair of his becoming suspended; had a conversation with Stewart after his suspension; I said to him, "Stewart, you are suspended in Lafayette Council;" "Yes," he said, "I know I am suspended;" as near as I can recollect, he said, "You are a nice set of fellows there

to suspend me when I am absent; when my friends are absent I put my hand in my pocket and pay for them." I made some remark, told him "that was a strict law, that a man couldn't stand for another; unless he paid the money there, he couldn't vouch for him, therefore, if a man wasn't there with money in his pockets, I couldn't help it; it was my duty to declare him suspended without prejudice." He said, "If that is the way you fellows do and don't stand back of me in my absence, you can go to the devil."

"Q. Did you state to him in conversation what your object was in speaking to him on the subject; if so, state what was said on the subject? A. I stated to him it was my object, it was my duty as commander of that council, to inform him to see that he had been notified. If he had not I would inform him so he could take care of his own case, he could keep himself in good standing. He got the information from me as I was occupying the chair as presiding officer of that council. Q. You mean he could reinstate himself as a member? A. Yes, reinstate himself as a member by conforming with the law; making his appearance and paying up his back dues and assessments. Q. Did you tell him that? A. I told him that was the only way he could be reinstated. Q. It was in reply to that he said you could go to the devil? A. Yes, sir."

The constitution and by-laws of the order were also put in evidence.

Upon the close of the testimony the defendants asked a number of instructions, all relating to the effect of the non-payment of the assessment numbered 64 by Hugh Stewart, and his subsequent suspension, which the court refused to give. The court, upon the plaintiff's motion, declared that under the evidence the finding must be for the plaintiff in the sum of two thousand dollars with interest, and made judgment for the plaintiff, thereby declaring in effect that the plaintiff had

established a right of recovery by the evidence, and that the evidence of the defendant, if true, amounted to no defense. The court thereupon rendered judgment accordingly.

The defendant, appealing, assigns for error among other things, the refusal of the court to non-suit the plaintiff as requested, and the court's declaration that the plaintiff was entitled to recover as a matter of law.

We think the court did not err in refusing to non-suit the plaintiff. The plaintiff made out a *prima facie* case by offering the benefit certificate which recites that Hugh Stewart is a member in good standing, and that she offered to make proof of his death to the defendant, which the defendant refused to receive. The *status* of the member once fixed is presumed to continue. *Mulroy v. Knights of Honor*, 28 Mo. App. 468.

The defendant concedes this proposition, but claims that the plaintiff went further in her proof and showed affirmatively that Stewart had been suspended before his death; that having shown this, it was incumbent on her further to show, either that the suspension was wrongful, or else that Stewart was subsequently reinstated, as the presumption is in favor of the rightfulness of the suspension, nothing to the contrary appearing.

This is a mistaken view of the plaintiff's evidence. The plaintiff did show that the defendant's officers declined to receive proof of death on the ground that they claimed that Stewart was suspended. This was done for the purpose of showing a waiver of the proofs of death. There was no evidence offered by the plaintiff showing an actual suspension. The first assignment therefore is not tenable.

Before we proceed to the examination of the next assignment we must refer to certain parts of the documentary evidence, relating to the contract under consideration, its nature and character, and the respective

rights of the parties thereunder.    Law 3 provides, that
every member shall name in his application the person
to whom he desires the benefit to be paid.    Such nam-
ing is made subject to a different future disposal of the
member, which while in good standing he may make at
any time in the manner prescribed by the law.    The
mode and manner of change, thus prescribed, is one upon
which the association has a right to insist for its own
protection ( *Coleman v. Knights of Honor*, 18 Mo.
App. 194 ), but one which the association may waive
at any time provided such waiver is admissible under
its laws.

To speak of a vested right of the beneficiary, under
such conditions, is a misconception of the idea of vested
rights.    The beneficiary has during the lifetime of the
member no vested right in the legal sense of that term,
as his right, whatever its nature may be, can be divested
at any time by the concurrent action of the member and
the association, permissible under the laws of the latter.
*Grand Lodge v. Elsner*, 26 Mo. App. 118, and cases
cited.    That such is the logical import of the contract is
fully borne out by the authorities, if any were needed
to vindicate the correctness of a proposition so obvious.
*Barton v. Association*, 63 N. H. 535 ; *Swift v. Associa-
tion*, 96 Ill. 309, 314.    In that respect the case is
essentially different from *McDermott v. Life Associa-
tion*, 24 Mo. App. 73, and *Reid v. Life Ins. Co.*, 58 Mo.
425, relied on by the respondent.

The laws of the defendant require that the collector,
on the receipt of a notice of assessment, shall notify
every member liable to an assessment.    They further
provide that such notices shall be in the form prescribed
by the supreme council, and that each member shall
pay the amount due on the notice of the collector within .
forty days from the date of such notice, and if he fails
to do so may be suspended.    The application of the
member which admittedly forms part of the contract

provides "in case of my suspension, or expulsion from, or voluntarily severing my connection with, the order, I shall forfeit the rights of myself and family or dependants to all benefits and privileges therein.—I agree to conform in all respects to the laws, rules, and usages of the order now in force or which may hereafter be adopted by the same."

There was evidence in this case, that notice of assessment 64 was mailed to Hugh Stewart to his address given in the book, and that he had repeatedly responded before to similar notices sent in a similar manner to the same address. There was evidence that the notice bore date February 6, 1885, that the forty days expired March 18, 1885, and that he was not suspended until March 24, 1885, or more than forty days after the date of this notice. It is true that this evidence was not as positive as it might have been, but it comes with ill grace from the plaintiff who permits almost three years to intervene between the death of her son, and taking any steps touching this benefit, now to say that the evidence is not sufficiently definite.

There was evidence tending to show that assessments in the year 1885 were levied monthly, and the defendant offered to show that several such assessments were levied between the date of assessment 64 in February, 1885, and Hugh Stewart's death in July, 1885, which evidence was excluded by the court.

We concede that the law is, that, where a law or contract mentions notice without any qualification, personal notice is meant. We have so decided repeatedly, and that is the law in other jurisdictions. We can not concede, however, that where the uniform usage of a society, with which all its members are familiar, has given to the word "notify" a different meaning. personal notice is still indispensable. We concede as claimed by the plaintiff, that where a right of forfeiture

is based upon the notice of an assessment, the giving of the notice provided by the laws of the order is a condition precedent to a valid forfeiture. We have so decided in *Siebert v. Chosen Friends*, 23 Mo. App. 268. On the other hand, we have decided in the same case, that knowledge on the part of the member that an assessment has been made is a fact from which the jury may infer that he has been properly notified, although not bound to do so.

Considering the law thus decided, and the facts in evidence in this case, we must conclude that the court's disregard of the defendant's evidence was manifest error. We do not intend to decide, as a matter of law, that the suspension of Stewart was legally valid, or that the notice which was given to him of assessment 64 was timely, so as to base a right of suspension thereon. Nor do we intend to decide that under the facts shown, Stewart, as a matter of law, waived personal notice. But we do decide that, on both of these questions, there was evidence which the defendant was entitled to have submitted to the jury. There was evidence that the uniform usage of the society and its members dispensed with personal notice, and the weight of that evidence was a question for the jury. There was evidence tending to show a waiver on part of Hugh Stewart of personal notice, and that question was one for the jury, as the contract was solely between him and the association. There was furthermore evidence that he had abandoned his connection with the order, a contingency provided for by the terms of the contract, and one which even in the absence of such provision is an inherent condition of all such contracts. *Borgraefe v. Knights of Honor*, 26 Mo. App. 224.

The subsequent declarations of Hugh Stewart were clearly admissible as bearing on the question of waiver and abandonment. The fact of subsequent unpaid

assessments was also admissible, not on the question whether they formed an additional ground of suspension, but as evidence corroborating Hugh Stewart's voluntary withdrawal.

It results that the judgment must be reversed and the cause remanded for further proceedings. It is so ordered. Judge BIGGS concurs. Judge THOMPSON concurs in the result.