## MAURICE KEILY et al., Respondents, v. KNIGHTS OF FATHER MATTHEW, Appellant.

**St. Louis Court of Appeals, December 31, 1913.**

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Action on Certificate: Defenses: Burden of Proof.** In an action on a certificate issued by a fraternal beneficiary association, the introduction of the certificate and proof of the death of the member made a prima-facie case, and the burden was then on defendant to establish its defense that the member resigned from the association prior to his death, since the status of a member, as such, is presumed to continue until the contrary is made to appear.

2. ————: ————: ————: **Question for Jury.** In an action on a certificate issued by a fraternal beneficiary association, *held* that it was a question for the jury, under the evidence, whether insured had resigned from the association, as alleged by defendant in defense of the action, and hence it was error to direct a verdict for defendant.

3. ————: **Voluntary Associations: Right of Member to Resign.** Unless the compact between the members of a voluntary association otherwise provides, a member may withdraw from it at any time without the consent of the association, subject only to the right of the association to enforce against him any obligation incurred by him during his membership; and hence where a member of a fraternal beneficiary association resigned in open meeting of a subordinate lodge of the association, it was not essential that the association act upon the resignation, in order to terminate the relations between it and the member.

4. **TRIAL PRACTICE: Credibility of Witnesses: Question for Jury.** The credibility of the witnesses and the value and the weight to be given to their testimony are questions for the jury.

5. **FRATERNAL BENEFICIARY ASSOCIATIONS: Resignation of Member: Evidence.** On the question of whether a member of a fraternal beneficiary association resigned therefrom in open meeting of a subordinate lodge of the association, the testimony of a witness present at such meeting, that he heard no such announcement by the member, possessed probative force and was to be received and considered with the other facts and circumstances, since a negative fact may be shown by negative evidence.

6. **EVIDENCE:** Negative Evidence. Negative facts may be shown by negative evidence.

7. **FRATERNAL BENEFICIARY ASSOCIATIONS: Resignation of Member: Evidence.** On the question of whether a member of a fraternal beneficiary association resigned therefrom in open meeting of a subordinate lodge of the association, the testimony of a witness, that, after the member had expressed his dissatisfaction at a raise in the rate of assessments, he walked to the secretary's desk, and, waving his passbook in the air, said, "I am done," did not conclusively establish that he had resigned, so as to justify the court's declaring such to be the fact as a matter of law, since the member may not have intended such expression as a resignation.

8. **TRIAL PRACTICE: Intention: Question for Jury.** The question of intention not clearly expressed is one *in pais*, to be ascertained and determined by the triers of fact, and not declared as a conclusion of law.

9. ———: **Uncontradicted Evidence: Question for Jury.** Where a prima-facie case is once made, it is improper for the court to declare that such prima-facie case is overcome as a matter of law by the introduction of mere oral evidence and facts *in pais* short of admissions, even though such evidence appears to be abundant to do so and remains uncontradicted.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED AND REMANDED.

*Ryan & Thompson* for appellant.

(1) The trial court was right in sustaining the demurrer at the close of plaintiff's case, as the evidence, oral and written, uncontradicted and unimpeached, was conclusive that Mr. Keily had resigned. A verdict for plaintiff could not have been rested on any evidence, but would have been based purely on conjecture. Richey v. Woodmen of the World, 163 Mo. App. 235; Newland v. Modern Woodmen of America, 168 Mo. App. 311. (2) If this court will consider the question raised at the trial, and decided adversely

to plaintiff, touching the admission of testimony that there was a custom requiring a resignation to be in writing, and formally accepted by the council, then we submit the court's ruling was correct. The order being a mere voluntary association a member may at any time sever his connection therewith. Lewin v. Grand Lodge, etc., 104 Mo. App. 20; State ex rel. v. Grand Lodge, etc., 78 Mo. App. 546; Miller v. Grand Lodge, etc., 72 Mo. App. 505; Stewart v. Supreme Council, etc., 36 Mo. App. 319; Borgraefe v. Knights of Honor, 26 Mo. App. 218; 1 Bacon on Benefit Socities, sec. 111.

*Johnson, Rutledge & Lashly* for respondent.

(1) Where it is conceded that plaintiff has made a prima-facie case in a suit on a benefit certificate and where only conflicting evidence is developed on defendant's case on a defense that the member resigned, the case must go to the jury. Troll v. Home Circle, 161 Mo. App. 719; Boone v. Railroad, 20 Mo. App. 235; Hirsch v. Grand Lodge, 78 Mo. App. 361; Jefferson v. Life Assn., 69 Mo. App. 133; Dawson v. Wombles, 111 Mo. App. 540; Reynolds v. Hood, 209 Mo. 618; Gannon v. Gas Light Co., 145 Mo. 514; Hegenburg v. Frisco, 147 S. W. 193. (2) Abandoned pleadings of the opposite party are proper evidence as admissions. The abstract shows that the abandoned answer offered in this case conceded that the deceased was a member until November first, or after the date on which it is claimed by defendant he resigned. Spurlock v. Railroad, 125 Mo. 104; Overton v. White, 117 Mo. App. 576; Meriweather v. Knapp, 224 Mo. 617. (3) A custom of receiving only written resignations and officialy acting upon them only in open meetings which had been adhered to for twenty years is as binding on a fraternal society as if embodied in a by-law. Especially is such the case where (as here) there

is no by-law or other regulation on the subject in is-
sue. State v. Grand Lodge, 70 Mo. App. 456; 5 Am.
& Eng. Ency. Law, 91; Henry v. Jackson, 37 Vt. 431;
10 Cyc. 354. Abandonment of an insurance contract is
largely one of intent. Insurance benefits in a fraternal
order are dependent on the status of one as a member.
3 Cooley's Briefs on Insurance, 2835; Hyatt v. Legal
Protective Assn., 106 Mo. App. 610. The status of a
member once fixed is presumed to continue. The issu-
ance of a benefit certificate is prima-facie proof of
good standing. Stewart v. Supreme Council, 36 Mo.
App. 329; 3 Cooley's Briefs on Insurance, 2425.

NORTONI, J.—Defendant appeals from an order
of the court setting aside a judgment of involuntary
nonsuit entered against plaintiff. The suit is on a
certificate of life insurance issued by defendant, a mut-
ual benefit society.

The sole defense relied upon in the answer is that
the insured member voluntarily resigned his member-
ship in the order shortly prior to his death. This
defense, however, is denied in the reply and a sharp
issue is made concerning it. Plaintiffs are children
of the inusred member, and it is conceded that they
are the proper beneficiaries and as such entitled to
recover, provided the insurance contract obtained at
the time of the death of their father.

It appears that at the trial plaintiffs introduced
in evidence the benefit certificate issued by defendant
order to their father several years before, and estab-
lished the fact of his death, which is conceded. A
prima-facie case for them having thus been made, de-
fendant assumed the burden of establishing the de-
fense set forth in its answer—that is, that David
Keily, the insured member, resigned from the order
in open meeting of his council on October 27, 1910.
It appears that on November twelfth the insured took
sick and departed this life November 24, 1910. The

evidence introduced by defendant is quite convincing that Keily resigned his membership in the order, as insisted in the answer, but, of course, is not conclu- sive on the court to that effect, and especially is this true when considered in connection with that given for plaintiffs in rebuttal.

It appears that at a recent convention of the or- der, the Knights of Father Matthew, the rates for in- surance had been readjusted and the new rating fell with a heavy hand upon the older members. Keily, the insured, was an elderly man and had been a mem- ber of the order for many years. According to the new rates he would be required to pay on his $2000 insurance an assessment of about $7.28 per month, whereas theretofore he had paid but $3.58 on the same. He and others of the older membership affiliated with St. Bridget's Council in St. Louis were greatly dis- pleased because of this. On the night of October 27, 1910 this matter was freely discussed at the meeting of St. Bridget's Council, of which Keily was a mem- ber, and he participated in the discussion. The record reveals that the meeting was more or less a stormy one and a number of the members expressed them- selves with considerable force and vehemence on the subject. Mr. Keily was a man of determination and spoke with emphasis suggesting that the recent re- rating was unjust to himself and many of the others situated like he. Finally, during the meeting, Mr. Keily went forward to the desk of the secretary and paid his last previous assessment, it is said that fall- ing due on September thirtieth. A number of wit-, nesses on the part of defendant who were present say that Mr. Keily then declared that he resigned from the order and would no longer affiliate with it; that he turned around after paying the financial secretary and waved his passbook over his head as if greatly vexed and openly asserted his resignation from the order in open meeting. However, it does not appear that the

meeting acted upon such resignation, if it was offered, as the presiding officer did not lay it before the council. But the secretary made a minute during the meeting to the effect that brother David Keily resigned from the order and spread this upon the records of the council a few days thereafter. Although this minute was afterwards spread upon the record, it was not read to the council until at a meeting after the death of the insured.

There is evidence, too, on the part of defendant that some of the members besought the insured not to resign from the order but to continue as a social member even though he abandoned his insurance. It is said that Mr. Keily paid no heed to these friendly suggestions and said that he was "done." Several witnesses for defendant having stated the facts to have transpired at the meeting of the council as above set forth, plaintiffs introduced others in rebuttal. One of these witnesses introduced by plaintiffs is an eminent expert on handwriting, who testified that upon carefully inspecting the passbook of David Keily, the insured member, it appeared the last assessment paid by him, according to the entry in the passbook, was on October 28, 1910 instead of October 27, the date of the meeting. Moreover, the insured's passbook itself bearing the date was introduced in evidence and exhibited to the jury. This evidence, of course, tends in a way to contradict defendant's theory that Keily paid his last assessment on October 27 in open meeting, and tends to show he acted the part of a member thereafter. Plaintiffs likewise introduced two witnesses, members of the order, who were present at the meeting and were, no doubt, so situate as to observe and know what occurred there in respect of remarks addressed openly to the meeting as such, that is in contradistinction to private remarks or conservation. One of these witnesses, Mr. John T. Hunt, stated that he, too, participated in the discussion of the rates and

that he sat within three or four feet of Mr. Keily throughout the evening. Concerning the asserted resignation of Keily from the order, Mr. Hunt says he heard no such remark. He saw Mr. Keily leave his chair and walk forward to the secretary's desk, which, it appears, was situate about fifteen or twenty feet distant from the witness. This witness says, "He walked up to that table and then he said to the secretary— I didn't hear, but he took his book as he turned around, and he made a kind of what I thought a defiant swing with his passbook, and came back and sat down, I think a little in advance of where he was seated before." At another place the same witness says, "I didn't hear what Mr. Keily said at that table, because it wasn't said in a tone loud enough for me to hear. I was distant from that table, I should judge, about fifteen or twenty feet." It appears from this that the witness had his eye on Mr. Keily all of the time and it may be inferred too that he was situate near enough to him to hear an audible open announcement made in the meeting as for its benefit, though not so situate as to hear a private remark addressed by Keily to the secretary.

The witness Flanagan, introduced in rebuttal by plaintiffs, testifies positively that Mr. Keily did not say he resigned from the order. This witness says, "I sat pretty close to him, probably three or four chairs away from him" and he heard Mr. Keily's remarks addressed to the meeting. The witness says, "Mr. Keily left the chair and walked up to the financial secretary, and went up there with his book, and he turned away after he left the secretary, he held his book up and says 'I am done.' He walks back and somebody then asked about the rate question, and I don't know whether it was Mr. Keily, or not, that asked about the rate question." At another place in his testimony the following questions propounded to, and answers by, this witness appear: "Q. Don't you

know that he got up and said 'I resign?'    A.  No, he didn't say, 'I resign.'   Q.  What did he say?  A.  All he said, when he walked away from the financial secretary, he put his book up and said 'I am done.' ' "

On this evidence and at the conclusion of the entire case, the court gave an instruction at defendant's request peremptorily directing a verdict for it and plaintiffs thereupon took an involuntary nonsuit. Thereafter the court sustained plaintiffs' motion, which was duly filed, to set the nonsuit aside, and reinstated the case on the docket for trial.  The appeal is prosecuted from this order, and it is insisted the court erred in sustaining the motion to set aside the judgment of nonsuit, for it is said there was no issue of fact whatever for the jury.  We do not accede to this view, however, for obviously it is not within the province of the court to weigh the testimony, give judgment upon the credibility of the witnesses and declare as a conclusion of law that a valid defense appeared —that is, that Keily had actually resigned from the order on October 27.  There can be no doubt that, by offering the certificate of insurance in evidence and showing the death of the member, plaintiffs made a prima-facie case, for the status of the member as insured in the order thus shown to be once fixed is presumed by the law to continue until the contrary is made to appear.  Thereafter the burden of proof is on defendant to relieve itself from the obligation to respond on the relation, and the contract which is thus prima facie established.  [See Stewart v. Sup. Council, etc., 36 Mo. App. 319; Mulroy v. Sup. Lodge, etc., 28 Mo. App. 463; 3 Cooley's Briefs on Insurance, p. 2425.]  Plaintiffs thus having made a prima-facie case for the consideration of the jury, it devolved upon defendant to overthrow it by showing that the insured member resigned his membership in the order and thus abandoned his insurance in open meeting of St. Bridget's Council on October 27, 1910.

It is entirely true that, unless the compact between the members of a voluntary association provides to the contrary, a member may withdraw from it at any time. The affiliation with such an order is said to be voluntary in character—that is, the act of the member in entering into the order and in remaining in it and in the performance of the duties incumbent upon him by reason of his membership are purely voluntary, and because of this he may withdraw when he chooses, and this, too, without the consent of the association. This right of withdrawal is subject only to the right of the association to enforce against the member any obligations incurred by him to the association during the time that his affiliation with it obtained. [See 1 Bacon, Benefit Societies (3 Ed.), Sec. 111; Borgraefe v. Sup. Lodge, etc., 26 Mo. App. 218; Ellerbe v. Barney, 119 Mo. 632, 25 S. W. 384.] There is no question involved here pertaining to obligations which Keily, the member, assumed to the order meanwhile, and it is therefore clear under the rule of decision above cited that it was competent for him to discontinue his relations with the order and abandon his insurance in the open meeting of the council on October 27th as defendant asserts he did. It was therefore not essential that the council should act upon his resignation, as by accepting it, to the end of terminating the contract relations between the order and the insured. The voluntary resignation, if actually made, sufficed to discontinue the insurance contract as it does not appear that he had paid assessments due after September 30th which, though paid on October 27 or 28, would carry the insurance to November first.

No steps had been taken towards suspending Keily for nonpayment of the assessment called for the month of October, and it may be, though the point is not decided because it is neither made nor involved here, that his insurance continued for that reason until his death on November 24 unless he resigned on

October 27. At any rate, the asserted resignation of Keily on October 27 at and in the open meeting of the council is the sole defense relied upon in the answer and invoked at the trial. It is therefore with this alone that the court is concerned.

It appears that some days after the meeting of October 27 Keily was reported by the financial secretary of St. Bridget's Council to the superior office of the order as having resigned and his name was entered there accordingly. But, of course, such is not conclusive on the beneficiaries, plaintiffs here, unless their father actually resigned at the time. There is considerable evidence that he did so, and this, too, in the open meeting and thereafter refused to even affiliate further as a social member of the order without insurance. But there is evidence, too, introduced in rebuttal, tending to prove that the financial secretary received his assessments on October 28 and credited the same as of that date in his passbook. It is true the secretary says he may have made a mistake in entering the date and that he received no assessments from Keily after the meeting of October 27; but be this as it may, the book was in evidence together with the testimony of the expert on handwriting and that of the financial secretary, and no one can doubt the matter of the credibility of the witnesses and the weight to be given and value of their testimony was one for the jury.

Moreover, the testimony of Mr. Hunt goes to the effect that, though he was within fifteen or twenty feet of Keily and looking at him all the time when it is said he resigned, he heard no such statement made by him. It is true this witness says that he did not hear what Mr. Keily said to the financial secretary, but it may be inferred from this that Keily made no statement openly to the council to the effect that he resigned from the order. The evidence of this witness is contradictory to that of others who gave evi-

dence for defendant, in that they asserted Keily's resignation was openly made to the council, whereas the witness Hunt says he heard no such statement whatever, and it would seem that a mere private remark to the secretary should not suffice on a matter of such importance. It is true the evidence of Hunt is negative in character, but a negative fact is to be shown by negative evidence. In this view, negative evidence, it is said, inheres with probative force and is to be received and considered by the jury along with the other facts and circumstances appearing in the case. [See Stotler v. C. & A. R. Co., 200 Mo. 107, 98 S. W. 509.]

Furthermore, the evidence of the witness Flanagan, introduced in rebuttal, is pointed and direct to the effect that Mr. Keily did not resign at the time. This witness repeats the statement that Keily said nothing about resigning from the order but merely waved his passbook in the air and said, "I am done." Obviously the court may not declare as a matter of law the meaning involved in the words, "I am done," when considered with relation to the facts in proof. This is within the province of the jury alone, for it is to be ascertained *in pais* and no principles of law whatever intervene for reckoning in the solution. It may be when Keily said, "I am done," he intended the council should understand that he then resigned his membership in the order, or it may be that he intended he was done attending the meetings only, in which latter event he might keep up and continue his insurance thereafter. But it is not for us to say what he intended by those words, for no one can doubt that the question of intention not clearly expressed is one *in pais*, to be ascertained and determined by the triers of fact, and not declared as a conclusion of law in any case, and especially so in one of this character.

Obviously there was sufficient in the evidence introduced in rebuttal to render the question of whether

or not Keily resigned in open meeting one for the jury. But aside from this entirely, the question was for the jury even though no evidence in rebuttal whatever was given, for plaintiffs made a prima-facie case as above stated on introducing the certificate and showing the death of their father. It then devolved upon defendant to overcome such prima-facie case by showing to the reasonable satisfaction of the jury that Keily had resigned in an open meeting of the order on October 27. It is an established rule of decision in this jurisdiction, and we believe a wholesome one too, that when a prima-facie case is once made it may not be declared by the court as a matter of law to be overcome by the introduction of mere oral evidence and facts *in pais* short of admissions, even though such evidence appears to be abundant to do so and remains uncontradicted by other testimony given in rebuttal for plaintiff. Even in such a situation, it is said the weight and value of the testimony and the credibility of the witnesses are for the jury to consider and not within the province of the court. [See Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968; 47 S. W. 907; Troll v. Protected Home Circle, 161 Mo. App. 719, 141 S. W. 916.]

We have examined the authorities cited by defendant, and upon scrutinizing them discover nothing in conflict with the rule last stated. The court very properly set the judgment of involuntary nonsuit aside and reinstated the case on the docket for trial. Obviously the facts in the record invoke the consideration of a jury. The order setting aside the nonsuit should be affirmed and the case remanded for further proceedings. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.