HENRY CASTENS, Respondent, v. SUPREME
LODGE KNIGHTS & LADIES OF HONOR, Ap-
pellant.

**St. Louis Court of Appeals, April 6, 1915.**

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Action on Bene-
fit Certificate: Burden of Proof.** In an action on a benefit cer-
tificate issued by a fraternal beneficiary association, plaintiff
makes a prima-facie case by introducing the certificate and
showing the death of insured and that all assessments and
dues were paid at the time, and the burden then rests upon
defendant, pleading the suicide of insured as a defense, to
establish such defense

2. **TRIAL PRACTICE: Uncontradicted Evidence: Province of Jury.**
After plaintiff makes a prima-facie case, the evidence introduced
on the part of defendant to overcome and repel it is for the
jury to consider and weigh, even though it is not contradicted
by plaintiff, for the reason that it is peculiarly within the
province of the jury to give judgment on the credibility of the
witnesses and the weight and value of their testimony.

3. ————: ————: ————: **Effect of Admissions.** The rule that,
where the evidence for plaintiff makes a prima-facie case, the
sufficiency of defendant's evidence to establish his defense is
a question for the jury, even if defendant's evidence is not
contradicted by plaintiff, does not apply where plaintiff's ad-
missions prove the fact defendant is required to prove in order
to establish such defense.

4. **LIFE INSURANCE: Conclusiveness of Proof of Death: Evi-
dence.** The proof of death furnished by the beneficiary named
in a life insurance policy constitutes prima-facie evidence of
the facts therein stated, and such proof is conclusive unless
contradicted or properly explained, as by showing some mis-
take, or something otherwise calculated to relieve against it.

5. **FRATERNAL BENEFICIARY ASSOCIATIONS: Action on Bene-
fit Certificate: Conclusiveness of Proof of Death: Evidence.** An
affidavit furnished as part of the proof of death of a member
of a fraternal beneficiary association, which was signed by a
friend of the beneficiary, from information furnished by the
beneficiary, and adopted by the latter as his own, and which
stated the cause of death of insured as suicide, was a binding
admission of the beneficiary that insured committed suicide,
in the absence of a showing of mistake, or something otherwise

Castens v. Knights & Ladies of Honor.

calculated to relieve against it, and precluded his recovery under a certificate making the insurance void in the event insured committed suicide.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED.

*Chas. F. Krone* and *August Walz, Jr.,* for appellant.

(1) The admitted testimony shows that under the by-laws of the defendant order, the occupation of a bartender was prohibited to those insured and that in engaging therein after he became a member without giving notice and paying increased assessments, all rights of recovery on the benefit certificate were forfeited, without the insured being charged or expelled from the order, while the testimony of both plaintiff and defendant shows that the deceased had entered into that prohibited occupation without giving notice or paying more and was engaged therein at the time of his death, by all of which plaintiff was precluded from recovery and it was the duty of the trial court to instruct the jury peremptorily to find for the defendant on all the evidence in the case. Brittenham v. Sovereign Camp, 180 Mo. App. 523; Easter v. Brotherhood, 154 Mo. App. 456; Britt v. W. O. W., 153 Mo. App. 698; Knode v. Modern Woodmen, 171 Mo. App. 377; Day v. Supreme Forrest, 174 Mo. App. 260; Clair v. Supreme Council, 172 Mo. App. 709; Thompson v. Fidelity, 116 Tenn. 557; Schmertz v. U. S. Life Ins. Co., 118 Fed. 250; Metropolitan v. Walton, 25 Ohio Cir. Ct. R. 587. (2) The admitted testimony shows that under the by-laws of the defendant organization, the suicide of the insured within five years of his becoming a member renders his benefit certificate null and void and prohibits all recovery thereon while the testimony of

both plaintiff and defendant shows that he had committed suicide within five years after his becoming a member, by all of which plaintiff was precluded from recovery and it was the duty of the court to instruct the jury peremptorily to find for defendant on all the evidence. Hainline v. Bank, 67 Mo. App. 483; Richey v. Woodmen, 163 Mo. App. 235. (3) While the presumption against suicide is strong it may be overcome by proof and where the reasonable probabilities from the evidence, all point to suicide as the cause of death of a member of a fraternal-beneficial society, so as to leave no room for reasonable controversy on the subject, a jury, in an action on such a certificate, should not be permitted to find to the contrary but the question must be decided by the court. And where the fact of suicide appears from the testimony of plaintiff as well as defendant or where the testimony of plaintiff corroborates that of defendant as to the fact of suicide the appellate court will interfere with the ruling of the trial court and reverse the judgment rendered below. Richey v. Woodmen, 163 Mo. App. 235. (4) Except that there is no presumption against a man entering upon the occupation of a bartender, the same rule applies to members of a fraternal-beneficial organization in engaging in that or any other prohibited occupation. Richey v. Woodmen, 163 Mo. App. 235; Hainline v. Bank, 67 Mo. App. 483.

*Robert H. Merryman* for respondent.

(1) That plaintiff having established a prima-facie case, the burden of proof was upon defendant to establish its affirmative defenses. That under the practice in this State it is beyond the power of a trial court to direct a verdict in favor of one having the burden of proof. The court might set the verdict aside if it was against the weight of the evidence, and if plaintiff again prevailed, the trial court would be powerless to

set it aside.   Troll v. Home Club, 161 Mo. App. 722;
Keily v. K. of M., 179 Mo. App. 619.   (2)   The appel-
late court will decline to interfere with a judgment be-
cause the verdict is against the evidence or the weight
of the evidence.    Garneau v. Herthel, 15 Mo. 192;
Stephen v. Metzger, 95 Mo. App. 627; Reid v. Ins. Co.,
58 Mo. 429; McCarthy v. Trust Co., 192 Mo. 402.   (3)   It
was a question for the jury whether defendant inten-
tionally shot himself under the facts in this case.   Cum-
mings v. Woodmen, 170 Mo. App. 194; Norman v. U. C.
T., 163 Mo. App. 183.    (4)    Occupation means that
which principally takes up one's time—one's regular
business or employment.   Cook v. Phonoharp Co., 163
Ala. 522-523.   (5) The question of what was plaintiff's
occupation was for the jury, since plaintiff only occa-
sionally helped his father in the saloon.   Cook v. Phono-
harp Co., 163 Ala. 522-523; Standard Life & Accident
Ins. Co. v. Fraser, 76 Fed. 705.

NORTONI, J.—This is a suit on a certificate of life
insurance.    Plaintiff recovered and defendant prose-
cutes the appeal.

Defendant is a fraternal benefit society, and plain-
tiff is the beneficiary designated in the certificate sued
upon.   In September, 1905, plaintiff's son, Albert H.
Castens, affiliated with defendant order, and the cer-
tificate of insurance, in an amount not exceeding $1000,
here sued upon, was issued to him in favor of his
father, plaintiff.   Among other things, the contract of
insurance provides that if the insured shall, within five
years after becoming a member of the order, die by an
act of suicide, whether sane or insane at the time of the
act, the relief fund certificate of such member shall
become null and void and the payment of no part of
the sum named therein shall be made.

In its answer, defendant invokes this provision
of the contract, and pleads that the insured came to his
death by his own act intentionally done—that is, that

he committed suicide —and, therefore, no recovery should be allowed. Plaintiff introduced the certificate of insurance in evidence, showed all of the dues and assessments were paid thereon, and that the insured member, Albert H. Castens, his son, died at the age of twenty-three years on the 13th day of November, 1908, which is within five years of the time he became a member of the order. After having thus made a prima-facie case, defendant assumed the burden of defense and introduced an abundance of evidence tending to prove the suicide of the insured as pleaded by it. Among other things, defendant introduced the affidavit of a friend, made part of the proof of death, which recited that the insured came to his death as a result of suicide. However, under instructions given, the jury found the issue for plaintiff—that is, to the effect that Albert H. Castens came to his death from some cause other than suicide—and awarded a verdict for the amount of the insurance.

It is urged the judgment should be reversed because the evidence is conclusive to the effect that the insured came to his death by his own hand from a gunshot wound intentionally inflicted with a view of committing suicide, and that especially is this true in view of the admission contained in the proof of death which is in nowise contradicted or explained. It may be said that there is no evidence whatever in the record tending to show that the insured came to his death from a natural cause, or from accident, except such as attends the situation by virtue of the usual presumptions which obtain in like cases. It is conceded on both sides that he died from a pistol shot in his left breast on the day and date mentioned—that is, November 13, 1908.

It appears that plaintiff owns a roadhouse on the Gravois road near or about the outskirts of the city of St. Louis. He resided there with his family and conducted a dramshop, restaurant, and wagon yard.

The insured, Albert H. Castens, plaintiff's son, had given a party at the roadhouse a night or two before, and was, during the while, admonished by his father to desist from drinking too much. The young man, it is said, took umbrage at this and went away, but returned the following afternoon. Shortly after his return and about four o'clock in the afternoon, a pistol shot was heard in the yard, and the insured was found lying at the entrance of a shed with a pistol beside him and a bullet wound in the left breast, from which he died. He was removed by a couple of men under the direction of plaintiff, from the place where he had fallen, into the waiting room of the roadhouse, immediately. The insured was still living at the time and one of those who assisted in removing him into the building, Mr. Stumpf, said he talked to his father about being sorry about killing himself. "He said he was sorry he tried to kill himself; that is all I paid any attention to." Dr. William Baron, who was called in forthwith and administered treatment to the young man said: "After I made him as comfortable as I could, under the circumstances, the father came in and said, 'My boy, why did you do this?' The young man answered, 'Father, forgive me for what I have done.'" The patient was removed to St. Mary's Hospital on the advice of Dr. Baron, and Dr. Rassieur was called in attendance as well. Dr. Rassieur, testifying from his minutes, made at the time while standing at the bedside of the patient, probably two hours after the shot was fired, said the young man stated to him in substance that he shot himself in a fit of alcoholic depression. At the time, he was still conscious, but died suddenly an hour or two later, between eight and nine o'clock the same evening. The young man told Dr. Rassieur, according to his testimony, that he had been drinking, and the doctor said he was run down from drink.

In rebuttal, a police officer testified for plaintiff that he was present at the hospital all of the time except about fifteen minutes when Dr. Rassieur was with the patient, and that he heard the insured make no statement to the doctor to the effect that he had shot himself. Furthermore, in rebuttal, plaintiff testified that he did not know whether his son shot himself or not, but detailed the facts about having heard a pistol shot in the yard and finding the young man lying near the shed with the pistol beside him and the wound in his breast. Plaintiff denies that his son said, "Papa, forgive me for what I have done" and asserts that he said no more than "Papa, forgive me." Plaintiff admits that he was questioned by the coroner on the following day, but says he did not appear at the coroner's office, and gave his statement over the telephone only. This statement plaintiff signed a day or two later, but said he did not read it before signing it. The purport of this statement is, that the young man had stayed away from home over night, returned, went into the kitchen of the house, had a pistol in his hand, swung it around, and went from the restaurant into the yard. "I went in the back, a shot fell, and he was standing in the yard by the shed and I seen him fall and I run up to him and said, 'What have you done?' and he said, 'Papa, forgive me.' "

Concerning the proof of death, it appears that such was made out and furnished at the instance of plaintiff, and, as parcel of it, an affidavit made by his friend, Richard Kolle, stated the insured came to his death by suicide. Richard Kolle, it appears, was plaintiff's friend, the driver of a beer wagon by occupation, and was godfather to the insured. He had no knowledge as to the cause of death of the insured except what plaintiff had told him. Concerning this matter, plaintiff testifies as follows:

"Q. You told Kolle what happened? A. I don't know. Q. But you got him to make out the affidavit—

the death affidavit? A. Yes, sir. Q. You remember when he signed that paper you had to send to the lodge, don't you? A. Yes, sir. Q. You remember that now? A. Yes, sir . . . Q. Richard Kolle is your particular friend? A. Yes, sir, he was godfather over my boy. Q. You told him about the death of your son and how it happened? A. Yes, sir. I don't know how it happened. Q. But you told him about it, didn't you? A. I guess I did; I don't know; I am bound to do it, I guess. Q. You got him to make an affidavit, didn't you, as your friend? He made an affidavit about the death of your son, didn't he? A. I don't know. Q. He proved the death, as it were? A. I suppose he did. Q. You remember that, don't you? A. He was godfather for him. Q. And as godfather you had him make the proof of death of your boy? A. Yes, sir; sure. Q. And you told him about the facts, didn't you? A. Yes, sir. Q. You are the man that told him about the facts? A. Yes, sir; sure. Q. So what information he had he got from you; isn't that so? A. I suppose he did; he didn't see it; Kolle wasn't there. Q. All he knew about it was what you told him about it? A. Yes, sir.'' Then the witness disclaims knowledge of the fact of suicide recited in the proof of death because he said, ''I didn't see him shoot himself, how could I say it? I didn't see him shoot himself.'' And he says, too, that he never authorized Kolle to sign the affidavit but knows that he did so. However, later, the witness gives the following testimony: ''Q. Is it your proof of death now? Do you acknowledge it as being the proof of death by you or not? A. It is; of course, it is. Q. Your proof of death? A. Yes, sir, of course.''

It appears, as before stated, that, in the affidavit of Kolle, which was furnished as parcel of the proof of death in accordance with the provisions of the contract requiring the affidavit of a relative or near friend, the cause of death of the insured is stated to be suicide.

There can be no doubt that by introducing the certificate of insurance showing the death of the insured and that all of the assessments and dues were paid at the time, plaintiff made a prima-facie case. Such is the accepted rule of law on the subject. So much having been shown, it devolves, generally speaking, upon defendant, who pleads a forfeiture of the insurance, to carry the burden of this defense and show to the satisfaction of the jury that the deceased came to his death by his own hand from a wound intentionally inflicted—that is, suicide. [See Troll v. Protected Home Circle, 161 Mo. App. 719, 141 S. W. 916; Keily v. K. of F. M., 179 Mo. App. 608, 162 S. W. 682.] But, of course, if it appear through a valid admission made by plaintiff as one against his interest, which is in nowise contradicted or explained, that the insured came to his death from suicide, there is no burden of proof for defendant to carry, and the question is removed entirely from the province of the jury as one of fact to be determined by that tribunal. In this connection, it is to be conceded, too, that, after plaintiff makes a prima-facie case, the evidence introduced on the part of defendant to overcome and repel it is for the jury to consider and weigh, even though it is not contradicted on the part of plaintiff. This is true because it is peculiarly within the province of the jury under our system to give judgment on the credibility of the witnesses and the weight and value of their testimony on any given question of fact in issue. [See Gannon v. Laclede Gas Light Co., 145 Mo. 502, 516, 517, 46 S. W. 968; 47 S. W. 907; Troll v. Protected Home Circle, 161 Mo. App. 719, 141 S. W. 916.]

But, obviously, this rule of law is without influence if it appears plaintiff's right to recover is concluded by admissions against interest on his part, neither contradicted nor explained, which establish the very fact defendant is otherwise called upon to prove.

Here, though it appears that plaintiff's son, the insured, died at the hospital on the 13th day of November, 1908, from a pistol shot, there is no evidence in the record whatever tending to show that he came to his death as the result of accident or that the wound was inflicted by another. However, it was not essential for plaintiff to show the cause of death. It is sufficient to show the insured died and then the burden of showing suicide rests with defendant, and the question is usually one for the jury. But, if it appears that plaintiff made a valid admission in solemn form that the insured died from suicide and the admission is neither contradicted nor otherwise relieved as through some reasonably sufficient explanation, no recovery may be allowed. It appears from the record that plaintiff made this admission in the proof of death furnished to defendant. It is true the fact so stated was in the affidavit of Richard Kolle, his friend, who made the affidavit for him, but on facts furnished by plaintiff himself. The affidavit of Kolle was furnished in accordance with the requirement of the insurance contract and as a part of the proof of death on which plaintiff based his claim to recover the insurance. No one can doubt that the proof of death so furnished by the beneficiary in the policy constitutes prima-facie evidence of the facts therein stated. Such proof is conclusive, too, on the party furnishing it, touching the fact of suicide unless contradicted or properly explained as by showing some mistake or misapprehension or something otherwise calculated to relieve against it. [See Almond v. Mod. Woodmen of Am., 133 Mo. App. 382, 113 S. W. 695; Queatham v. Mod. Woodmen of Am., 148 Mo. App. 33, 42, 127 S. W. 651; Frazier v. Ins. Co., 161 Mo. App. 709, 141 S. W. 936; Coscarella v. Ins. Co., 175 Mo. App. 130, 137, 138, 157 S. W. 873.]

Here, plaintiff furnished the proof of death, reciting the cause of death to be solely suicide, and he

testified at the trial, as will appear by reference to the questions and answers above copied, that such proof is his proof of death in the instant case—that is, that he adopts it. He in nowise contradicts the statement that suicide was the cause of the death of his son. Neither does he offer any explanation whatever concerning the fact of suicide therein recited, except to say that, though he furnished Kolle, the affiant, all of the facts concerning the death of his son and adopts the proof of death, he could not have told him that he died of suicide because, "I didn't see him shoot himself, how could I say it? I didn't see him shoot himself." Obviously this is not a contradiction of the fact of suicide and neither is it such an explanation of the fact recited in the proof of death as is essential to destroy its value as an admission against interest made at the time.

The judgment should, therefore, be reversed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.