SARAH I. BAMBERGE, Respondent, v. SUPREME TRIBE OF BEN HUR, Appellant.

St. Louis Court of Appeals. Argued and Submitted April 3, 1911. Opinion Filed July 15, 1911.

1. INTEREST: Recovery: Pleading. Although section 7179, Revised Statutes 1909, provides for the allowance of interest at the rate of six per cent. per annum on all money demands after they become due and payable, it will not be awarded unless the party entitled to it asks for it in his pleading.

2. INSTRUCTIONS: Fixing Amount of Recovery: Fraternal Beneficiary Associations. Where, in an action on a fraternal benefit certificate stipulating that if the member, after three years and within five years from the date of the certificate, should commit suicide, the beneficiary could recover only one-fifth of the amount of the certificate, the evidence showed that the member died within that period, and plaintiff's theory was, that he died a natural

Bamberge v. Supreme Tribe Ben Hur.

death, while defendant's theory was, that he committed suicide, an instruction that if he committed suicide the beneficiary could recover only one-fifth of the certificate, while if he did not commit suicide the jury should return a verdict for the full amount, with interest at the rate of six per cent. per annum from the date of filing suit, was not prejudicial as invading the province of the jury, by fixing the amount of the recovery.

3. ———: Interest: Recovery: Fraternal Beneficiary Associations, Where the petition, in an action on a fraternal benefit certificate. demanded interst, in accordance with the provisions of section 7179, Revised Statutes 1909, an instruction, directing the jury that they "should," instead of "might," allow interest on finding for plaintiff, was not erroneous.

4. ———: Explaining Admissions: Comment on Evidence: Fraternal Beneficiary Associations. Where, in an action on a fraternal benefit certificate, the beneficiary explained her statement in the proof of loss that the member committed suicide, by stating that she could not remember her testimony before the coroner's inquest over the body of the member, and the society relied on the proof of loss and the beneficiary's declaration before the coroner to prove suicide, an instruction that if the beneficiary had no personal knowledge of the manner of the member's death, the recital in the proof of loss could be considered as a circumstance merely, in connection with all the other evidence, in determining whether the member committed suicide, correctly declared the law and was not objectionable as a comment on the evidence.

5. INTEREST: Allowance: Fraternal Beneficiary Associations: Action on Certificate. Under section 7179, Revised Statutes 1909, allowing six per cent interest on all money demands after maturity, the allowance of interest, as demanded by the petition in an action on a fraternal benefit certificate, from the institution of the action to the date of the verdict, is not erroneous.

6. APPELLATE PRACTICE: Harmless Error. The court, on appeal, will not reverse a judgment unless error was committed against the party complaining, which materially affects the merits.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey*, Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant.

(1) Plaintiff's first instruction is reversible error, because it invades the province of the jury by peremptorily fixing the amount of plaintiff's recovery. Cates v. Nickel, 42 Mo. 169; Dawson v. Wombles, 111 Mo. App. 532; Lederer v. Morrow, 132 Mo. App. 438; Kroge v. M. B. of A., 126 Mo. App. 693; Corbitt v. Mooney, 84 Mo. App. 522; Burghart v. Brown, 60 Mo. 24. (2) Plaintiff's first instruction is also erroneous in peremptorily directing the jury to allow interest in the event they found in favor of the plaintiff. Corbitt v. Mooney, 84 Mo. App. 645; Cates v. Nickel, 42 Mo. App. 169; Burghart v. Brown, 60 Mo. 24; Kroge v. M. B. of A., 126 Mo. App. 693. (3) Plaintiff's third instruction is reversible error for the following reasons: (a) It is a direct and improper comment on the evidence. Connelly v. Railroad, 120 Mo. App. 652; Zander v. Transit Co., 206 Mo. 445; Tibbe v. Kamp, 154 Mo. 545. (b) It is an incorrect declaration of the law. Sparr v. Wellman, 11 Mo. 230; Chapman v. Railroad, 26 Wis. 295; Reed v. McCord, 18 App. Div. 381, 46 N. Y. Supp. 407; Shaddock v. Town of Clifton, 22 Wis. 114. (4) The verdict of the jury is excessive. Balch v. Myers, 65 Mo. App. 422.

*J. F. Merryman,* for respondent, filed argument.

REYNOLDS, P. J.—This action was commenced January 10, 1909. The statement prepared and submitted by counsel for appellant is so fair and concise that we use it verbatim and it is as follows:

"The petition, in effect, avers that defendant is a corporation, organized under the laws of Indiana, authorizing the formation of voluntary fraternal beneficiary associations, and that having complied with the laws of this state, it is duly authorized to engage in business here as a fraternal beneficiary association; that on the 5th day of September, 1903, Wilson B.

Bamberge, deceased husband of plaintiff, was regularly admitted into membership in the defendant order and that on said date the defendant executed and delivered to said Bamberge a benefit certificate, whereby it agreed and promised to pay plaintiff, at the death of her husband, the sum of eight hundred dollars upon condition that said Bamberge was, at the time of his death, a member of defendant in good standing, and had complied with all of its by-laws, rules and requirements; that said Bamberge died on the 17th day of October, 1907, a member of defendant in good standing, and having, up to the time of his death, complied with all of its by-laws, rules and requirements.

"Plaintiff further avers that due notice and proof of death of said Bamberge were given defendant, and payment of said sum of eight hundred dollars demanded, which the defendant refused to pay.

"The answer admits all of the allegations of the petition and, as an affirmative defense, avers that under the terms of said certificate and the laws, rules and regulations of defendant, which are made a part thereof, it was provided that if plaintiff's husband, after three years and within five years from the date of said certificate, should die by his own hand, sane or insane, whether voluntary or involuntary (except when the insanity of such member has been judicially determined by the proper court) the plaintiff would be entitled to one-fifth of the amount of said certificate, provided that said Bamberge was a member of the defendant in good standing at the time of his death. Defendant further avers that said Wilson B. Bamberge died by his own hand on the 17th day of October, 1907, after three years and within five years from the date of his certificate, and by reason thereof plaintiff is entitled to recover $160; that before the bringing of this suit the sum of $160 in money had been

tendered plaintiff, and she refused to accept the same. This tender is again made in the answer.

"The reply denies that defendant is a fraternal beneficiary association and avers that the certificate issued to plaintiff's husband is a contract of insurance. Plaintiff also denies that her husband died by his own hand, as alleged in the answer.

"There were but two issues controverted at the trial, only one of which is material here, namely: The defense of suicide. It was agreed by the court and counsel that if plaintiff's husband committed suicide, as alleged in the answer, she was entitled to recover on the certificate the sum of $160, with or without interest. It was denied by defendant that plaintiff was entitled to recover the sum of $800.00.

"The evidence in plaintiff's behalf tends to show that Wilson B. Bamberge was a gasfitter, forty-nine years old, and that plaintiff is his widow; that on the 17th day of October, 1907, about 7:20 p. m., he was found dead, lying face downward on a bed in his home at 4231a Harris street, in this city, with a bullet hole in his temple. Deceased, his wife and two daughters, occupied the second and third floors of the house at the above number. Just before his demise, deceased left the family supper table and went to the third floor of his residence for the ostensible purpose of dressing for a meeting of his lodge in defendant order, which he contemplated attending that evening. About ten or fifteen minutes after he had gone to the third floor, a crash was heard by the members of his family, and upon investigation Bamberge was found dead, as has been stated. There were no witnesses to the tragedy and but one witness who saw him immediately after his demise was called by the plaintiff, although she and her daughter both saw the deceased within a very few moments after he was killed. Neither plaintiff nor her daughter took the stand in her behalf. No facts or circumstances were shown which tended to

disclose any reason why the deceased should have killed himself. A revolver, which he owned and usually carried when he went out at night, was found after he was killed. Plaintiff was called to the stand by the defendant and admitted signing and swearing to a statement which was a proof of death submitted by her to defendant, wherein she states that the cause of her husband's death was 'suicide by a gunshot wound in head.' Her sworn statement concludes as follows:

" 'Q. Have you carefully read all of the foregoing questions and fully and honestly answered them? A. Yes.

" 'Said affiant, under oath, further avers that the answers given to the foregoing questions and statements made herein are fully understood by her and are true in every particular and complete without evasion.'

"This affidavit was executed by plaintiff on the 22nd day of November, 1907, one month and five days after the death of her husband. She sought to explain away the deliberate and solemn admission made in the foregoing affidavit by saying that she did not know how her husband came by his death, and that she made the affidavit upon advice to avoid 'notoriety.' She admitted being a witness at the coroner's inquest, but when asked if she did not testify there that she heard the shot, went to the third floor and found her husband dead on the bed, with his revolver 'alongside of him,' said she did not remember anything that she testified to before the coroner. The uncontradicted evidence shows that at the time of Bamberge's death, there were no other persons in the house than the members of his family. There was no evidence and no attempt by plaintiff to prove that Bamberge was shot by any other person than himself. Defendant's refused instructions (were intended to) submit the case to the jury on the theory of inten-

tional suicide and accidental self-destruction. The evidence shows that Bamberge either committed suicide or died by the accidental discharge of his own pistol."

We only add this, taking it from the testimony of plaintiff, who was called as a witness by defendant: Plaintiff admitted that she signed the proof of death in which among other questions was this: "Give exact cause of death? Suicide by gunshot wound in head." Plaintiff testified that she made that answer "under advice;" that a doctor who prepared the proof of death for her, had told her to put it that way "to save notoriety," but she had no personal knowledge of how her husband met his death, further than he was found dead in his room. Questioned as to her statements before the coroner's jury, plaintiff denied remembering them, explaining that she was very much excited: even if she did say her husband had killed himself, or committed suicide, she knew nothing at all about it. The court asked her if she knew anything more about how her husband came to his death than she did when she testified before the coroner; she said she did not, and that she had told at this trial all— everything—that she knew or ever did know about it. She testified that her husband got up from the table when they had had their supper, at home, and was getting ready to go to the lodge and went upstairs. He was in a great hurry, but did not come down. She waited a few minutes and heard a crash— would not say it was a shot—heard a crash, as though something was falling; sent her daughter upstairs to see what was the matter, as everything was so still; the .daughter went to the head of the stairs and came down and said: "Papa is lying on the bed." She went up to see if he was sick and that was all she knew. When she first went up did not see any wound in his head; saw him lying in bed and supposed he was sick; did not see the wound until a neighbor who came in

showed it to her. It may be said that there is no proof whatever in the record as to how the member met his death, further than that it was by gunshot— whether he did it himself by accident or of purpose was not shown—even that he was the one who fired the shot was only a matter of inference, not of direct evidence. It was conceded that at the time of the issue of the certificate of membership the defendant was duly authorized to and was doing business in this state as a fraternal beneficiary association.

The only instructions set out by appellant's counsel in his brief are plaintiff's instructions Nos. 1 and 3, which are as follows:

"1. Gentlemen of the jury: The court instructs you that it conclusively appears from the pleadings, evidence, and admissions of counsel in this case that the deceased Wilson B. Bamberge became a member of the defendant order on the 5th day of September, 1903; that he died on the 17th day of October, 1907, more than three years, and less than five years after thus becoming a member. That at the time of his death he was a member in good standing in the defendant order; that when he became a member thereof on September 5th, 1903, there was issued to him the benefit certificate or policy of insurance sued upon in this case, in which the plaintiff, Sarah I. Bamberge, is named as the beneficiary; that the plaintiff was then the wife of the deceased, and is now his widow. That by the terms of said benefit certificate the defendant promised to pay to the beneficiary named therein the sum of eight hundred dollars upon the death of her husband in good standing, subject to certain conditions hereinafter mentioned, and the plaintiff is entitled to recover whatever sum the defendant is now bound to pay, by said certificate.

"You are further instructed that under the pleadings and evidence in this case, the defendant is shown

to be a fraternal beneficiary association, as defined in section 1408, Revised Statutes of the State of Missouri, and that it is not an old line insurance company, and that in consequence of this fact, the defendant may plead and show, it if can, that the deceased, Wilson B. Bamberge, committed suicide, and thus reduce the amount of its liability upon said certificate; and that the only fact which you are to determine in this case is whether or not the deceased did end his own life by committing suicide.

"In this connection, you are further instructed that there is no evidence in this case showing or tending to show that the deceased was insane at the time of his death, and that if he did take his own life, it appears from all the evidence that the act of so doing must have been voluntary and intentional upon his part.

"The court therefore instructs you that if you believe and find from all the facts and circumstances shown in evidence in this case that the deceased ended his own life by voluntary and intentional suicide, then you should return a verdict in favor of the plaintiff for one-fifth, only, of the amount payable under said benefit certificate without interest thereon if you find that defendant tendered that sum to plaintiff when proof of death was made and with interest thereon at the rate of six per cent per annum from the tenth day of January, 1908, the date when this suit was instituted, if you find no tender was made, including in your verdict the amount of such interest, if any.

"If, on the other hand, you find and believe from all the facts and circumstances shown in evidence in this case that the deceased did not end his own life by voluntary and intentional suicide, then you should return a verdict in favor of the plaintiff for the full amount payable under said benefit certificate, with interest thereon at the rate of six per cent per annum,

from the tenth day of January, 1908, including in your verdict the amount of such interest.

"You are still further instructed that the burden rests upon the defendant to show by the preponderance or greater weight of the evidence that the deceased took his own life by suicide, as defined above.

"3.   The court instructs the jury that though plaintiff in submitting her proof of the death of her husband, Wilson B. Bamberge, may have stated in answer to an interrogatory, that his death was the result of suicide, yet you are instructed that if you believe from the evidence that when she made that statement she only stated what she was informed of by others and not what she knew of her own personal knowledge, and if you further believe from the evidence. that the plaintiff has no personal knowledge of the manner of her husband's death, then the fact that the proof of loss contains the statement that her husband came to his death by suicide is simply to be considered by you as a circumstance in the case in connection with all the other evidence in determining the main question of whether or not he, Wilson B. Bamberge, came to his death as a result of a self-inflicted. wound."

Error is assigned on these alone.   The other instructions given and those asked by appellant and refused are not there set out nor is error assigned to them or to the refusal of those asked by appellant. There was a verdict for plaintiff November 26, 1909, for $890.13.   After an unsuccessful motion for a new trial and saving exceptions to that being overruled, defendant has duly appealed to this court.

The errors here assigned and relied on are these: First.   "Plaintiff's first instruction is reversible error, because it invades the province of the jury by peremptorily fixing the amount of plaintiff's recovery."   Second.   "Plaintiff's first instruction is also erroneous in peremptorily directing the jury to allow

interest in the event they found in favor of the plaintiff." Third. "Plaintiff's third instruction is reversible error for the following reasons: a. It is a direct and improper comment on the evidence. b. It is an incorrect declaration of the law. c. The verdict of the jury is excessive."

We are unable to agree to the first proposition made by the able counsel for appellant, that the first instruction is reversible error in that it invades the province of the jury by peremptorily fixing the amount of plaintiff's recovery. Our statute, section 7179, Revised Statutes 1909, allows interest at the rate of six per cent per annum on all money demands after they become due and payable. While the law allows this, it is not awarded unless the party asks for it in his pleading. Here plaintiff prayed for the recovery of $800, together with interest and costs. The instruction of the court told the jury that if they found the member ended his own life by voluntary and intentional suicide, plaintiff could only recover one-fifth of the full amount insured, but if they found that the member did not end his life by voluntary and intentional suicide, then the jury "should return a verdict in favor of the plaintiff for the full amount payable under said benefit certificate, with interest thereon at the rate of six per cent per annum from the 10th of January, 1908, including in your verdict the amount of such interest." There is no peremptory fixing of any amount here made by this instruction. The action was commenced on the 10th of January, 1908, and this instruction was very favorable on the matter of interest as far as defendant was concerned, for it is a matter of some question whether under the terms of the policy or certificate of membership interest should not have been allowed either from the date of the death of the member or from the date of filing proof of the death with the order.

Nor can we sustain the second assignment of error, to the effect that the court had committed error in peremptorily directing the jury to find interest if they found for plaintiff. We do not understand the cases referred to by the counsel for appellant sustain the proposition. When interest is asked for in the petition or pleadings and the law allows it, there is no error in the court directing the jury to include in their judgment the amount of the debt as well as interest. As far as we understand this second assignment, it proceeds on the idea that the court erred in using the word "should" instead of "may" allow interest. If this is the point, it is too trivial to discuss.

We cannot agree to the third assignment of error for either of the grounds alleged: First, that it is either a direct or improper comment on the evidence or an incorrect declaration of the law.

In the case of Evans v. Modern Woodmen of America, 147 Mo. App. 155, 129 S. W. 485, we approved an instruction which in substance told the jury that the statement contained in the affidavit of the plaintiff in the proofs of death furnished by him to the association, with relation to the date of the birth of the member, was an admission by the plaintiff as to the date of the birth of the member and establishes such fact, "unless said statement is explained or overcome by the evidence in the case to the satisfaction of the jury." We there said that the question of the discrepancy as to the age alleged to exist between the statement in the proofs of death and the evidence given at the trial placed the matter before the jury and made it a question for its determination and was submitted to the jury by such fair and full instructions that we would not disturb the verdict on this part of the case by holding that there was no evidence upon which to found the instruction itself. We cited in support of that proposition Connecticut Mut.

Life Ins. Co. v. Schwenk, 94 U. S. 593. More directly in point is the decision of the Supreme Court of the United States in Pythias Knights' Supreme Lodge v. Beck, 181 U. S. 49, where the proof of loss submitted stated that the deceased came to his death by suicide, and the verdict of the coroner's jury was to the same effect. The trial court charged the jury that the matter of this proof and of the finding of the coroner's jury was no estoppel against plaintiff in the case; that the plaintiff could explain the circumstances under which he signed the statement, and it was for the jury to determine from that as to the real facts. Mr. Justice Brewer said (1. c. 56): "We see no error in this ruling. None of the elements of estoppel enter into the declaration. The condition of the defendant was not changed by it, and if under a misapprehension of the facts she made a statement which was not in fact true, she could explain the circumstances under which she made the statement and introduce testimony to establish the truth." We do not think that this was an unfair comment on the evidence, or the singling out of any particular evidence, so as to be error. The declarations of plaintiff in her proof of loss and before the coroner were the proofs most relied on, in fact the only proof of suicide relied on by defendant. It was not only within the province of the court, but its duty, to direct the jury on the effect to be given to them, practically claimed as an estoppel against plaintiff. This instruction correctly states the law governing this.

As to the third subdivision of the third assigned error, that the verdict is excessive, we cannot agree with counsel. Casting interest at six per cent on $800 from the date of the institution of the suit to the date of the verdict, we find no error in the amount cast by the jury.

To put this decision in a smaller compass, the errors complained of do not go to any substantial

matters, and present no case demanding our inter-
ference. We are enjoined by statute, as well as by
our own ideas of the due and proper administration
of justice, that we shall not reverse the judgment of
any court unless we shall believe that error was com-
mitted by such court against the appellant and ma-
terially affecting the merits of the action. We find
no such error in the case at bar.

The judgment of the circuit court is affirmed.
*Nortoni* and *Caulfield, JJ.*, concur.