KATIE BRUCK, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

St. Louis Courts of Appeals, May 2 and 16, 1916.

1. **LIFE INSURANCE:** Misrepresentations: Statute. Under Sec. 6937, R. S. 1909, providing that no misrepresentation made in obtaining a life insurance policy shall be deemed material or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable and that whether it so contributed in any

194 M. A.—34

case shall be a question for the jury, the question of whether the matter alleged to have been misrepresented "actually contributed to the contingency or event on which the policy is to become due and payable" is one for the jury.

2. ————: ————: ————. Said statute applies alike to warranties and representations and draws no distinction between innocent and fraudulent misrepresentations.

3. ————: Evidence: Conclusiveness of Proofs of Death. Statements contained in the proofs of death made by the beneficiary of a life insurance policy, in accordance with the provisions of the policy, while admissible in evidence against him, in an action on the policy, are but prima facie binding as admissions against interest, and may be overcome by proof tending to explain or relieve against them.

4. ————: ————: ————. In an action on a life insurance policy, signed statements attached to the proofs of death, made by physicians who attended insured, stating that he died from tuberculosis, and that he was afflicted with that disease at the time he signed a written application for the insurance, in which he represented that he was not so afflicted, did not conclusively establish that he had misrepresented a matter that contributed to his death, so as to warrant the court in holding the policy void as a matter of law, where the beneficiary stated in the proofs that insured died from another malady, with which he was not afflicted at the time he made such application; the recitals in the physicians' statements having been contradicted by the beneficiary's statements, were not conclusive, but the question was for the jury, pursuant to Sec. 6937, R. S. 1909 (Stephens v. Insurance Company, 190 Mo. App. 673, distinguished).

5. ————: ————: ————. Even though the proofs of death had contained nothing to contradict the recitals in the physicians' statements, nevertheless such recitals would not be conclusive, in view of the fact that they were repelled by the certificate of insurer's medical examiner, and the further fact that the beneficiary and others who had associated daily with insured gave testimony tending to show that he was not suffering from tuberculosis at the time he made application for the insurance.

6. ————: Evidence: Condition of Health: Nonexpert Witnesses. In an action on a life insurance policy, where the state of health of insured at the time he applied for the insurance is in issue, testimony of persons who associated daily with insured, as to the state of his health, may not be cast aside as wholly devoid of probative force and evidentiary value.

7. ————: ————: ————: Admissions by Insured. In an action on a life insurance policy, defended on the theory that the policy was void because insured falsely represented in his application for the insurance that he was not afflicted with the disease that sub-

sequently caused his death, a statement made by insured several months prior to the making of such application, in an effort to obtain sick benefits under a policy issued by another company, that he was suffering from such disease, was not a conclusive admission, operating to establish such defense as a matter of law, where the certificate of insurer's medical examiner and the testimony of persons who had associated daily with insured tended to show that he was not suffering from such disease at the time he made application for the life insurance.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur,* Judge.

AFFIRMED.

*Leahy, Saunders & Barth* for appellant.

It has been very recently decided by this court that "proofs of death furnished by a beneficiary to the insurer under the policy are admissible in evidence against such beneficiary as proof by him of the truth of the statement therein contained, and when not contradicted or explained, may become conclusive against the right to recover on the policy." Stephens v. Met. Life Insurance Co., 190 Mo. App. 673, 680; also Castens v. Knights & Ladies of Honor, 190 Mo. App. 57. The case at bar is infinitely stronger than the cases applying the doctrine thus announced, for not only did the proofs of death furnished by the beneficiary to the insurer contain the admissions in the form of certificates of two physicians, the one that insured was on March 13, 1912, suffering with tuberculosis, and the other that insured died from this disease on the 8th of February, 1913, but also did the insured himself depose over his own signature to the Southern Surety Company in May, 1912, just three months before the date of issuance of the policies, that he was then suffering from "incipient tuberculosis," and accompanied this with the statement of a third physician that the said insured was afflicted with this disease. The certificates of the two physicians accompanying the proofs of death were in nowise "contradicted or explained." The physicians themselves were introduced as witnesses,

but respondent failed to cross-examine either of them upon the points involved. Thus the admissions "became conclusive against the right to recover on the policy." Stephens v. Metropolitan Life Ins. Co., 190 Mo. App. 673; Castens v. Supreme Lodge Knights and ladies of Honor, 190 Mo. App. 57; Almond v. Modern Woodmen of America, 133 Mo. App. 382; Queatham v. Modern Woodmen of America, 148 Mo. App. 33. Moreover, the admission of the insured himself that he was suffering with "incipient tuberculosis" is in no manner "contradicted or explained." Such fraud, operating as admissions, goes to the essence and is conclusive against recovery. The insured's false representations and concealments to the defendant's medical examiner were the occasion for that physician's certificate of proper risk. No right of recovery may thus inure to the beneficiary claiming under a contract conceived in uncontradicted and unexplained fraud. This was the principle underlying the Stephens case, *supra,* as well as the Castens case, supra, and is the principle which differentiates the case at bar from such cases as Clarkston v. Metropolitan Life Ins. Co., 190 Mo. App. 624; Buchholz v. Ins. Co., 177 Mo. App. 683; Roedel v. Insurance Co., 176 Mo. App. 584, and Coscarella v. Metropolitan Life Ins. Co., 175 Mo. App. 130.

*James J. O'Donohoe* for respondent.

(1) Proof that the policy was issued and that the insured was dead established plaintiff's prima-facie case and she was entitled to have the jury determine the credibility of the testimony, even though she introduced nothing to contradict that offered by defendant. Keily v. K. of F. M., 179 Mo. App. 608; Winn v. M. W. of A., 157 Mo. App. 1; Buchholz v. Ins. Co., 177 Mo. App. 690; Warren v. Ins. Co., 182 S. W. 96. (2) Under proper pleadings and sufficient proof the insured is entitled, under section 6937, R. S. 1909, to have the question of material misrepresentations submitted to the jury. Schuler v. Ins. Co., 191 Mo. App. 52; Clarkston v. Ins. Co., 190 Mo. App. 624;

Dodt v. Ins. Co., 186 Mo. App. 168; Buchholz v. Ins. Co., 177 Mo. App. 683; Roedel v. Ins. Co., 176 Mo. App. 584; Coscarella v. Ins. Co., 175 Mo. App. 130; Welsh v. Ins. Co., 165 Mo. App. 233; Ins. Co. v. Stiewing, 173 Mo. App. 108; Conner v. Association, 171 Mo. App. 364; Lynch v. Ins. Co., 150 Mo. App. 461; Salts v. Ins. Co., 140 Mo. App. 142; Burns v. Ins. Co., 141 Mo. App. 212; Williams v. Ins. Co., 189 Mo. 70; Keller v. Ins. Co., 198 Mo. 440; Jenkins v. Ins. Co., 171 Mo. 375; Kern v. Legion of Honor, 167 Mo. 471; Schuermann v. Ins. Co., 165 Mo. 641; Ashford v. Ins. Co., 98 Mo. App. 505. (3) The evidence does not establish that defendant would not have issued the policy had it known the real state of facts respecting which the alleged misrepresentations were made, and hence the defendant was not entitled to have the case submitted to the jury. It certainly would have been error had the court given an instruction in the nature of a demurrer to the evidence. Summers v. Ins. Co., 90 Mo. App. 691; Christian v. Ins. Co., 143 Mo. 460.

ALLEN, J.—This is an action upon two policies of life insurance, for $250 each (less unpaid premiums for the remainder of the year if death should ensue within the first "policy year"), issued by defendant insurance company on August 14, 1912, upon the life of one Fred W. Bruck, in favor of plaintiff, mother of the insured, named as beneficiary therein. The insured died on February 8, 1913. Plaintiff thereupon duly made proofs of death, and demanded of defendant the payment to her of the respective amounts provided by the policies to be paid according to their terms; and upon defendant's refusal to comply with such demand plaintiff instituted this suit.

The petition is in two counts based upon the respective policies. The answer is a general denial, coupled with a plea to the effect that the insured obtained the issuance of the policies sued upon by false and fraudulent representations, and the concealment of material facts.

The trial below, before the court and a jury, resulted in a verdict for plaintiff for $244 and interest —together with an award of $37.50 for attorneys' fees as for vexatious refusal to pay—upon each count of the petition. From a judgment accordingly entered the defendant prosecutes this appeal.

Plaintiff, to sustain the issues on her part, introduced the policies sued upon, and showed the. payment of all premiums due thereon, the death of the insured on February 8, 1913, and the demand thereafter made upon defendant and the latter's refusal to pay. And plaintiff adduced testimony respecting the value of the services of plaintiff's attorney in the action. Testimony of plaintiff on cross-examination, and that of plaintiff and other witnesses in her behalf adduced in rebuttal, will be noticed later.

In defense defendant introduced in evidence the application of the insured, upon which the policies were issued, together with the certificate of defendant's medical examiner who examined deceased to ascertain whether or not he was an insurable risk. In his application the insured stated that he was then in good health, had no bodily defect or infirmity, had "not had within five years any sickness, ailment, disease (bodily or mental)," and that neither he nor any member of his family had ever had consumption. Defendant's medical examiner, in his certificate, stated, among other things, that the appearance of the insured indicated health and vigor; that there was "no indication by auscultation and percussion of any disease of respiratory organs;" that there was nothing in the applicant's appearance, mode of living, etc., which, in the opinion of the medical examiner, would tend to shorten duration of life; and that he "without reservation" recommended the applicant as "safely insurable."

Defendant put in evidence the proofs of death submitted by plaintiff or in her behalf when making claim to the insurance provided by the policies to be paid her. In the signed statement of plaintiff, filed as a part of the proofs of death, she stated that the insured

died of *pleurisy,* and that he first complained of ill health about four months prior to his death. Attached thereto was the certificate of the physician who attended the insured in his last illness, Dr. Kinner, wherein *phthisis pulmonalis* was given as the cause of death. In this certificate Dr. Kinner stated that he could not definitely tell when the insured's health was first impaired, but that, from "history of the case," it was about four or five months prior to death.

With the proofs of death, and as a part thereof, was the certificate of a Dr. Diehl who therein stated that he had attended the insured on March 6 and March 9, 1912, at which times insured was suffering from bronchitis; that on March 13, 1912, he examined the patient for "T.B." (shown to mean tuberculosis) which he "found positive." And that he "turned the patient over to Dr. E. R. Ward."

Drs. Kinner and Diehl testified as witnesses for defendant, and, apart from the proofs of death, defendant introduced in evidence a written statement signed by the insured in March, 1912, in making application to another insurance company for a sick benefit under a policy of insurance, in which statement, in answer to an inquiry as to the nature of his illness or disease, this answer of insured appears, viz: "Incipiens (sic) tuberculosis." Attached to this was a statement or certificate of Dr. Ward wherein, among other things, he stated that the applicant was afflicted with "incipitus tuberculosis."

It is unnecessary to notice defendant's evidence in further detail.

Plaintiff testified that the condition of her son's, health was good at the time of the issuance of the policy, and that he died of pleurisy. She stated that Dr. Diehl prepared the proofs of death, though she signed the statement appearing over her signature. Her testimony and that of other witnesses intimately associated with the insured is to the effect that he, at least prior to the issuance of the policies, was a strong, healthy and vigorous young man who took an active

part in athletic sports, and tended at least to show that he was not then suffering from tuberculosis.

The only assignment of error pressed upon us relates to the ruling of the trial court on defendant's demurrer to the evidence. It is argued that the demurrer should have been sustained for the reason that the physicians' certificates, filed as a part and parcel of the proofs of death, constitute an admission by plaintiff that the insured died of tuberculosis, and that he had been afflicted with this disease prior to applying for the issuance of the policies; that this admission is wholly uncontradicted and unexplained and conclusively establishes the fraud charged in obtaining the policies, operating to defeat a recovery as a matter of law. And it is further argued that the admission of the insured made in his application to another insurance company for sick benefit, shown in evidence, is in like manner fatal to plaintiff's case.

Our statute governing the matter in hand, viz., section 6937, Revised Statutes 1909, provides: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

This statute has been before our courts in numerous cases. The reason for its enactment is well stated in Schuermann v. Insurance Co., 165 Mo. l. c. 649, 650, 65 S. W. 723, as follows:

"The act in question was in no sense intended as a general restraint upon the power of the courts of equity by proper proceedings to relieve against actual fraud, perpetrated or attempted against insurance companies doing business in this State, by parties seeking insurance; but its manifest aim and object was to check and prevent the wrongs and injustice that too frequently befell the relatives and friends of the insured after their death, resulting from the growing

evil practiced by life insurance companies, of calling for answers to all manner of immaterial questions from the applicant for insurance, bearing the remotest degree, if at all, upon the risk to be assumed, and then by a general provision, incorporated in the policy to be issued, declaring that if any one of the answers be untrue, or not as stated, it should avoid the policy, which .condition, without legislative aid, the courts were compelled to enforce without regard to whether the particular answer that was shown to be untrue was material to the risk or not, or whether the untrue answer was the result of an innocent mistake or an intentional wrong.''

In a vast array of cases similar in their essential facts to that now before us, our courts have held that whether the matter alleged to have been misrepresented ''actually contributed to the contingency or event on which the policy is to become due and payable'' is a question for the jury. Among these are: Kern v. Legion of Honor, 167 Mo. 471, 67 S. W. 252; Keller v. Insurance Co., 198 Mo. 440, 95 S. W. 903; Conner v. Annuity Association, 171 Mo. App. 364, 157 S. W. 814; Coscarella v. Insurance Co., 175 Mo. App. 130, 157 S. W. 873; Roedel v. Insurance Co., 176 Mo. App. 584, 160 S. W. 44; Buchholz v. Insurance Co., 177 Mo. App. 683, 160 S. W. 573; Clarkson v. Insurance Co., 190 Mo. App. 624, 176 S. W. 437; Schuler v. Insurance Co., 191 Mo. App. 52, 176 S. W. 274.

The statute applies alike to warranties and representations (Keller v. Insurance Co., supra), and draws no distinction between innocent and fraudulent misrepresentations (Kern v. Legion of Honor, supra, overruling Ashford v. Insurance Co., 80 Mo. App. 638 and Van Cleave v. Union C. & S. Co., 82 Mo. App. 668).

But appellant here relies upon admissions of both plaintiff and the insured, which it is said stand unexplained and uncontradicted in the record, with nothing to rebut or repel the force thereof, whereby it is conclusively admitted not only that the representations of the insured in his application for insurance were false,

but that the matter so misrepresented was one which contributed to the contingency or event upon which the policy was to become due and payable, to-wit, the death of the insured. And it is contended that under such circumstances there is nothing to go to the jury, and that it is the province and the duty of the court to give effect to the admission or admissions and deny a recovery as a matter of law. In support of this contention appellant's learned counsel rely upon the recent opinion of this court in Stephens v. Metropolitan Life Ins. Co., 190 Mo. App. 673, 176 S. W. 253.

It is true that proofs of death furnished to the insurer by a beneficiary in accordance with the provisions of the policy, when making claim to the insurance therein provided to be paid, are admissible in evidence against the beneficiary in a suit upon the policy. Admissions therein contained, however, are but *prima facie* binding upon the beneficiary as admissions against interest, and may be overcome by proof adduced tending to explain or relieve against them. [See Queatham v. Modern Woodmen of America, 148 Mo. App. 33, 127 S. W. 651; Bamberge v. Supreme Tribe Ben Hur, 159 Mo. App. 102, 139 S. W. 235; Stephens v. Insurance Co., supra.] In no event can an admission of this character be conclusive against the plaintiff, as a matter of law, thereby in effect taking the case out of the operation of the statute, supra, unless it be in a case where nothing whatsoever appears in evidence tending in any way to explain or contradict the admission or impair the force and effect thereof.

In the Stephens case, supra, under the facts presented, and upon the authority of the cases there cited (190 Mo. App. l. c. 680) we held, indeed, that an admission of the plaintiff in the proofs of death furnished by him was, under the circumstances of the case, conclusive against him, and operated to preclude his recovery upon the policy. But the Stephens case, upon its facts, differs so widely from that now before us as to render the decision therein of no value as a precedent here in appellant's favor. In the Stephens case

there was a provision in the policy to the effect that the insurer assumed no obligation thereunder unless on the date of the policy the insured were alive and in sound health. Such provisions in policies are now held to be affected by our statute, supra, but may operate to defeat a recovery even in the present state of our law, provided it appear that the insured, at the time of the issuance and delivery of the policy was suffering with the malady which resulted in his death. [See Stephens v. Insurance Co., supra, l. c. 678.] And the facts in the Stephens case were that the insured entered a hospital in the City of St. Louis on November 16, 1909, having, about two weeks prior thereto, applied for the insurance in question. The policy was not issued until November 29, 1909, at which time the insurer's agent without knowledge of the condition of the health of the insured, delivered the policy to plaintiff, the beneficiary, who was fully cognizant of the fact that the insured was then confined in a hospital and near death's door. On the following day, to-wit, November 30, 1909, the insured died. In making proofs of death the plaintiff, over his own signature, stated that the insured entered the hospital November 16, 1909, and remained there under treatment until his death fourteen days later, and stated also that the insured was suffering from and died of cirrhosis of the liver. Attached to this statement of the plaintiff and constituting a part of the proofs of death, was a certificate of the attending physician who treated the insured in his last illness, wherein the physician stated that the insured entered the hospital on November 16, 1909, suffering from cirrhosis of the liver and myocarditis for which he was there treated and from which he died. There was nothing to explain or contradict these admissions, or to impair the force and effect thereof. It is true that the plaintiff said that he signed the statement without reading it. But he did not undertake to explain it, and no particle of evidence of any nature whatsoever appeared in the record to contradict the truth of these admissions. Under these

circumstances we held that the admissions in the proofs of death conculsively showed that the insured was not in sound health at the time of the delivery of the policy to the beneficiary but was in fact then suffering from the very disease which caused his death one day later.

The Stephens case did not turn upon the question of false representations of the insured made in applying for the policy. In the course of the opinion it is said by NORTONI, J:

"There is evidence tending to prove that insured was not suffering from such disease when the application for the insurance was made, two weeks before entering the hospital."

As it is distinctly stated that evidence appeared tending to prove that the insured was not, at the time of his application, afflicted with the disease which resulted in his death, any question as to false representations on his part in procuring the insurance would undoubtedly have been a matter for the jury.

In the case before us the signed statement filed by plaintiff as a part of the proofs of death states that the insured died of pleurisy, and that the duration of the illness was about four months, and so plaintiff testified. The certificate of the attending physician, filed as a part of the proofs of death, on the contrary stated that the insured died of phthsis pulmonalis, the physician stating that, so far as he could tell from the history of the case, insured's health became impaired four or five months prior to death. The other certificate appearing with the proofs of death tends to show that an examination of the insured revealed that he was afflicted with tuberculosis prior to the application for the policy and that he was treated for this.

It cannot be said that these proofs of death constitute such an admission against interest as to be conclusive upon plaintiff in this action. Plaintiff's own statement in terms contradicts that of the attending physician as to the cause of death. Whatever value

it may be proper for the triers of the fact to place upon this certificate of the attending physician, as opposed to the statement of the beneficiary, it cannot be said that the former entirely overcomes the effect of the latter, effacing it altogether, and operating as a conclusive admission that the insured died of tuberculosis. It is true that we said in the Stephens case that the matter could there be determined upon the physician's certificate, but there the plaintiff's statement did not in terms contradict the physician's certificate, but fully corroborated it. Had such contradiction existed in the proofs of death themselves, a different case would have been presented.

And on the other phase of the matter, i. e., as to whether or not plaintiff was suffering from tuberculosis when he applied for the policy, or had suffered therefrom prior thereto, the proofs of death are not conclusive as admissions against plaintiff. Plaintiff's signed statement is to the effect that the insured's health first became impaired about four months prior to death, and the certificate of the attending physician, so far as it goes, tends to support this. Whatever may appear as to this elsewhere in the proofs of death, it is certain that it does not appear entirely without contradiction that prior to his application the insured was suffering from the disease which resulted in or contributed to cause his death.

But aside from all this, and adjudging the case as one in which the proofs of death themselves contain nothing to contradict the admissions of the physicians' certificates, the recitals in the proofs of death are here sufficiently contradicted by other evidence in the record to make the case one for the jury under our law. In the first place, the certificate of defendant's own medical examiner is to the effect that he examined the insured at the time of the application for the policies and found no "indication by auscultation and percussion of any disease of respiratory organs;" that there was nothing in the insured's appearance, mode of living, habits, etc., indicating a predisposition to dis-

ease which would tend to shorten the duration of life. And the medical examiner recommended the insured "without reservation" as being "safely insurable." It is true, as appellant says, that the medical examiner testified at the trial that he refrained from making a more thorough examination of the insured because of the latter's answer, in his application, respecting his condition of health. But this affords nothing more than the basis for an argument to be addressed to a jury, and in no wise affects the ruling on the demurrer to the evidence. This testimony could by no means entirely overcome the effect of the certificate of the medical examiner, who had full opportunity to examine the insured and who did examine him and found nothing physically wrong with him. Indeed we but lately held in Clarkston v. Metropolitan Life Insurance Company, 190 Mo. App. 624, 176 S. W. 437 (wherein the opinion was rendered on the same day as was that in the Stephens case), that the report or certificate of the insurer's medical examiner, reciting that he had examined the insured's respiratory organs and found them in all respects sound, and that the insured possessed sound health and a good constitution, was alone sufficient, as evidence contradicting an admission of the character here in question, contained in the proofs of death, to take the case to the jury. In that case the certificate of one of the attending physicians, made a part of the proofs of death, stated not only that the insured died of tuberculosis but that he was suffering therefrom several weeks prior to his application for insurance. This, as an admission of plaintiff against interest, was held to be so far repelled by the certificate of the insurer's medical examiner alone as to make the question involved one for the jury. [See, also, Conner v. Annuity Ass'n; Coscarella v. Ins. Co.; Buchholz v. Ins. Co., supra.]

Furthermore is has frequently been held that the testimony of persons who have associated daily with the insured may not be cast aside as wholly devoid of probative force and evidentiary strength on the ques-

tion of the condition of the health of the insured at the time or prior to the application for insurance. [See Conner v. Annuity Ass'n supra.]

What we have said above as to the admissions contained in the proofs of death apply, with at least equal force, to the admission of the insured alleged to have been made when applying for sick benefits under a policy issued by another company. In view of the other facts shown in evidence, in no event could this admission be held to be conclusive so as to operate to defeat a recovery upon the policies as a matter of law.

It is quite clear that the case made was one for the jury, and that the trial court could not have sustained a demurrer to the evidence without doing violence to both the letter and the spirit of our law. It is true that there is much and very persuasive evidence in this record tending to show that the insured was, at the time of his application, suffering from the disease which resulted in his death less than six months later, and tending to convict him of false and fraudulent representations in making application for the policies. But it was not within the province of the trial court to pass judgment upon the facts, and we likewise are without power so to do.

No point is made respecting the award of attorney's fees as for vexatious refusal to pay, and that matter need not be touched upon.

It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.

## ON MOTION FOR REHEARING.

ALLEN, J.—Appellant insists that we have failed to give the case of Stephens v. Insurance Company, 190 Mo. App. 673, 176 S. W. 253 "the force and effect of authority." It is said that in that case, as here, a certificate of the company's medical examiner was in evidence, and was preserved in the record before this court, though the opinion does not so recite, wherein

the medical examiner certified to the good health of the applicant and recommended him as an insurable risk. While this is true, it does not make the Stephens case authority for appellant's contention. Indeed, we endeavored in the foregoing opinion to make it clear that there was some evidence in the Stephens case tending to prove that the insured was not *at the time. of his application for insurance* suffering from the disease which later caused his death; but that there was no evidence that he was not suffering from such disease when the policy *was delivered to the beneficiary, two weeks later.* The admission held to be conclusive in the Stephens case had to do with the condition of the insured's health at the time of the delivery of the policy; and nothing appeared in the case tending to contradict the statement of both the plaintiff and the attending physician, made in the proofs of death, to the effect that the insured was confined in a hospital suffering from the very malady which produced his death one day after the policy was delivered. As we said in the foregoing opinion, any question of false representations in obtaining the policy, in the Stephens case, would have been a matter for the jury, as here, because of the presence in the case of some evidence tending to show that the insured's health was good at that time; but we held that the condition of the insured's health at the time of the delivery of the policy was not a jury question, despite the statute, for the reason that it stood admitted by the plaintiff, without contradiction, that the insured was then suffering from the disease from which he died on the following day. Manifestly the two cases are entirely unlike.

It is further insisted that the opinion gives the impression that a trial court has no power to set aside a verdict, in a case of this character, as being against the weight of the evidence; and it is urged that the opinion should be modified so as to make it clear that trial courts have such power and authority, notwithstanding the statute, supra. But there is here no

question involved as to the power of the trial court to set aside a verdict in a case such as this, as in other cases, as being against the weight of the evidence. The trial court did not set aside the verdict, and the question before us pertains to the ruling on the demurrer to the evidence and this was likewise true in the Stephens case. It would consequently be unwise for us to here say anything as to the power of trial courts to set aside verdicts in such cases as these; for anything that we might say respecting the same would be mere *obiter dicta.* That question must be reserved to be passed upon in a case wherein the point is presented.

In the case before us it is altogether clear that no court could have properly sustained a demurrer to the evidence; and consequently we held, and still hold, that the ruling of the trial court on the demurrer was proper, and that as no other assignment of error here is made, the judgment should be affirmed.

The motion for rehearing is overruled.