Vormehr v. K. O. T. M.

SYLVESTER VORMEHR AND EMILY VORMEHR,
Respondents, v. KNIGHTS OF THE MACCABEES
OF THE WORLD, Appellant.

St. Louis Court of Appeals.   Opinion Filed January 8, 1918.

1. **APPELLATE PRACTICE: Review: Verdict.** In an action on a
fraternal benefit certificate, the defense being suicide, *held* that
under the evidence a judgment for plaintiffs could not be reversed
on the ground that the verdict for them was so manifestly against
the weight of the evidence as to suggest passion, prejudice, or
partiality.

2. **INSURANCE: Fraternal Insurance: Defense of Suicide: Burden of
of Proof.** In an action on a fraternal benefit certificate, which pro-
vided the contract should be void if insured died by his own hand,
the burden was on the society to sustain such affirmative defense
set up by it.

3. ———: ———: **Presumption Against Suicide.** Insured's parents,
his beneficiaries, were entitled to the benefit of the presumption
which the law indulges against suicide; a very strong presumption,
not easily overthrown.

4. ———: ———: **Death by Suicide: Question for Jury.** Where the
evidence tends to show the presence of cyanide of potassium in the
stomach of deceased, and that death resulted therefrom, and no
showing by defendant of suicidal intent, while plaintiffs' evidence
tends to show the absence of such intent, *held* a question for the
jury.

5. ———: ———: **Admission of Beneficiaries as to Suicide: Conclusive-
ness.** In an action against a fraternal society on its benefit cer-
tificate for a death, plaintiffs, beneficiaries, were not concluded
by an admission of insured's suicide contained in the proofs of
death; such admission being *prima facie* only, subject to explana-
tion and to be overcome by evidence tending to impair its effect,
while the undisputed testimony showed that the question in the
proofs of death was not asked the beneficiaries by the notary
who filled in the answer from his own knowledge of the coroner's
verdict.

6. ———: ———: **Action on Certificate: Instruction: Burden of Proof.**
In such action an instruction that, in determining whether in-
sured died by his own hand, the jury should not speculate or
guess as to whether or not he did die by his own hand, but that,
unless defendant had proved by a preponderance of the evidence
that accused did so die, verdict should be for plaintiffs, was not
erroneous, as leading the jury into the realm of speculation and
conjecture.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Leo S. Rassieur,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant; *D. D. Aitken* of counsel.

(1) Where the verdict of the jury is so manifestly against the weight of the evidence as to suggest passion, prejudice or partiality, the appellate court will not hesitate to order it set aside where the trial court has failed in its duty so to do. Harper v. St. Louis & San Francisco R. R. Co., 168 Mo. App. 296, 172 S. W. 55; Garrett v. Greenwell, 92 Mo. 125; Spohn v. Railroad Co., 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258; State v. Primm, 98 Mo. 372; Baker v. Stonebraker, 36 Mo. 345; Price v. Evans, 49 Mo. 396; Lehnick v. Street R. R. Co., 118 Mo. App. 611; Chitty v. Street R. R. Co., 148 Mo. 64; Mann v. Weiss, 185 Mo. 335, 170 S. W. 355; Smith v. Mystic Workers, 196 S. W. (Mo. App.) 62; Caruth v. Richeson, 96 Mo. 192; Spiro v. Transit Co., 102 Mo. App. 250; Richey v. Modern Woodmen, 163 Mo. App. 235; Gilmore v. Modern Brotherhood, 186 Mo. App. 445. (2) Defendant's demurrer to the evidence at the close of the whole case should have been sustained, because the evidence of defendant and plaintiffs showed overwhelmingly that the assured committed suicide, and because of the admission of the beneficiaries in the proofs of death that the cause of death was suicide, such admission not being relieved by any reasonably sufficient explanation. Smith v. Mystic Workers, 196 S. W. (Mo. App.) 62; Castens v. Supreme Lodge, Knights and Ladies of Honor, 190 Mo. App. 57; Stephens v. Metropolitan Life Ins. Co., 190 Mo. App. 679; Richey v. Modern Woodmen, 163 Mo. App. 235; Ageu v. Insurance Co., 80 N. W. (Wis.) 1020; Gilmore v. Modern Brotherhood, 186 Mo. App. 445. (3) Where the beneficiary sends in to the home office of the company proofs of death, which have attached thereto an affidavit or statement of a third party as to the cause or manner of death, this is binding on the beneficiary as an admission

and preludes recovery. Castens v. Supreme Lodge, Knights and Ladies of Honor, 190 Mo. App. 57; Stephens v. Metropolitan Life, 190 Mo. App. 679. (4) It was misleading, prejudicial and erroneous to tell the jury, as was done in plaintiff's instruction No. 1, that in determining whether or not the assured's death was caused by suicide, the jury should not speculate or guess. Peperkorn v. St. Louis Transfer Co., 171 Mo. App. 709; State ex rel. v. Ellison, 268 Mo. 239, 187 S. W. 23.

*Joseph Reilly* for respondents.

In the case at bar, the burden of proof was on the appellants to show that the deceased intentionally and willfully took the cyanide of potassium to destroy his life. As there was no evidence introduced at the trial to show this fact, the jury were justified in finding against suicide. If the insured died from accident or disease, or even murder, they are liable for the payment of the certificate to the beneficiaries. The presumption of law is against self destruction. In the absence of proof that the deceased committed suicide this presumption holds good. Almond v. Woodmen of the World, 133 Mo. App. 382; Claver v. Woodmen of the World, 152 Mo. App. 155; Norman v. U. C. T., 163 Mo. App. 175.

ALLEN, J.—Defendant is a fraternal beneficiary association, incorporated under the laws of Michigan and duly authorized to do business in this State as such an association. The action is one on a benefit certificate in the sum of $1000, issued by defendant to Albert S. Vormehr, plaintiffs' son, on February 25, 1908, wherein the plaintiffs are beneficiaries. The application of the assured, made a part of the contract between him and defendant, contained the following provision: "I also agree that should I die by my own hand, whether sane or insane at the time, this contract shall be null and void and of no binding force." The assured died on March 23, 1914; and after filing proofs of death, and upon defendant's refusal to pay the amount stipulated in the certificate, plaintiffs instituted this action.

The petition is in the usual form. The answer, among other things, avers that the assured died by his own hand, ''having administered or taken a dangerous drug known as cyanide of potassium,'' by reason whereof all rights under the benefit certificate became forfeited. This is put in issue by the reply.

The trial, before the court and a jury, resulted in a verdict and judgment in plaintiffs' favor for the amount of the benefit certificate, with accrued interest; and the case is here on defendant's appeal.

The evidence discloses that the assured, a young man about twenty-seven years of age, resided with his parents, the plaintiffs herein, in the city of St. Louis. It appears that on the afternoon of March 23, 1914, he was alone at the plaintiffs' home, and, it seems, had been lying upon a couch. His body was found upon the floor under circumstances indicating that he had fallen from the couch. A physician, Dr. Labarge, was called, who found that the assured was dead and summoned the coroner. A post-mortem examination was made by the ''autopsy physician to the coroner,'' Dr. Hachdorfer, who testified that the condition of the stomach and its contents indicated the presence of cyanide of potassium, and that in his opinion the assured died from the poisonous effect of that deadly drug. Likewise Dr. Labarge testified that the ''bluish color'' of the face of the deceased, which he observed, indicated—almost infallably—death from cyanide of potassium.

No cyanide of potassium or other poisonous drug was found upon the body or about the premises; nor was anything found which had contained any such drug. In fact nothing was discovered in connection with the death tending to cast any further light upon the matter.

The testimony for plaintiffs, in rebuttal, went to show that the assured ''was always in good spirits,'' and that he was never known to express any intention of committing suicide. His mother, Emily Vormehr, one of the plaintiffs herein, testified her deceased son had been in good health; though on cross-examination she admitted that she had testified at the coroner's in-

quest that he had "often complained about his stomach and often complained about having a pain in his side."

Dr. Labarge testified that he had prescribed for the assured, four or five years before the latter's death, for stomach trouble; but that the ailment was "nothing serious." He said that the young man was sometimes cheerful and sometimes depressed, but had never, in his presence, made any reference to committing suicide.

A witness, a saloon keeper, testified that the assured was in his saloon on March 23, 1914, between ten and eleven o'clock in the forenoon of that day, and said that he would return that evening; that the assured complained that he had had a "very bad night," said that he was taking medicine and that he was then leaving "to go to the doctor."

A witness, a friend of the assured, testified that he saw him about noon on March 23, 1914, and made an appointment with him to go a place of amusement that evening. And another witness, who had known the assured intimately for many years, testified that he was always of a very happy disposition and had "never said anything about being tired of living or committing suicide."

Defendant offered in evidence the proofs of death which had been sent to its home office by plaintiffs when laying claim to the amount named in the benefit certificate. These proofs of death, include as a part thereof an affidavit of plaintiffs wherein appear the following question and answer, viz: Q. "Immediate cause of death?" A. "Suicide." Plaintiff Emily Vormehr testified that when this affidavit was prepared in her presence by a notary, she was not asked this question and did not state that the assured died by suicide. And the notary public who filled out the paper, and before whom the oath was made, testified that he did not ask either of the plaintiffs this question, but filled in the answer, as it appears, because of the fact that he knew that the verdict of the coroner was that the deceased committed suicide. The proofs of death also contain a certificate signed and sworn to by the "commander" and

the "record-keeper" of the local order. Among other
things it is recited therein that the "deceased died of
suicide."

It is argued, for one thing, that the verdict is so
manifestly against the weight of the evidence as to sug-
gest passion, prejudice or partiality; and that for this
reason we ought to interfere, though the trial court re-
fused to set the verdict aside and grant a new trial.
But we regard it as quite clear that we cannot reverse
the judgment on this ground.

Appellant earnestly contends, however, that its de-
murrer to the evidence, interposed at the close of the
whole case, should have been sustained because (1) the
evidence "showed overwhelmingly that the assured com-
mitted suicide," and (2) "because of the admissions of
the beneficiaries in the proofs of death that the cause of
the death was suicide, such admissions not being suffi-
ciently relieved by any explanation." Of these in their
order:

The burden was, of course, upon defendant to sus-
tain the affirmative defense which it set up. Further-
more, plaintiffs were entitled to the benefit of the pre-
sumption which the law indulges against suicide, a very
strong presumption not easily overthrown. The evi-
dence adduced concerning the cause of the death of the
assured went no farther than to show that death result-
ed from the poisonous action of cyanide of potassium.
There is ample evidence tending to show the presence
of cyanide of potassium in the stomach of the deceased,
and that death resulted therefrom. Nothing, however,
directly appears as to how the cyanide of potassium
came into deceased's stomach, whether taken by him
with suicidal intent or through some accident or in-
advertence. There is little, if indeed anything, in the
evidence adduced tending to show a suicidal intent; while
the evidence of plaintiffs tends with no inconsiderable
force to show the absence of such intent. Under these
circumstances the case was manifestly one for the jury—
unless it be that plaintiffs are concluded by an admission
or admissions contained in the proofs of death, as is

contended. This is in keeping with the rule of decision in this State, established by a long line of cases.

As to the admissions in the proofs of death, appellant places much reliance upon the decisions of this court in Castens v. Supreme Lodge Knights & Ladies of Honor, 190 Mo. App. 57, 175 S. W. 264, and Stephens v. Metropolitan Life Ins. Co., 190 Mo. App. 679, 176 S. W. 253. But we think that these authorities do not support the position of appellant's learned counsel, in view of the particular facts of this case. It is true that in the cases cited admissions contained in the proofs of death were held to be binding and conclusive upon the beneficiaries, where nothing whatsoever appeared, either in the proofs of death themselves or in the evidence adduced in the case, tending in anywise to repel or impair the force and effect thereof. But it cannot be disputed that admissions so made are prima facie only, and are not only subject to explanation but may be overcome, as a matter of fact, by evidence in the case tending to impair the effect thereof. [Bamberge v. Supreme Tribe Ben Hur, 159 Mo. App. 102, 139 S. W. 235; Bruck v. Hancock, Mutual Life Ins. Co., 194 Mo. App. 529, 185 S. W. 753.] In the case before us the admission appearing in the affidavit of plaintiffs, filed as a part of the proofs of death, is explained by undisputed testimony showing that the question as to the immediate cause of death was not asked by the notary, but, on the contrary, that he filled in the answer thereto from his knowledge of the coroner's verdict. As to the certificate filed by the commander and the record-keeper of the local order (who evidently had no personal knowledge respecting the cause of death, but proceeded upon hearsay only), whatever effect it may be proper to give to statements therein contained, by way of admissions of plaintiffs against interest, by reason of the fact that plaintiffs, perforce, filed proofs of death in which such certificate was incorporated, we regard it as entirely clear that the force and effect of any such admission was so far impaired by the evidence in the case as to make the question as to the cause of death one for the jury. As said

above, not only was the burden upon defendant to sustain its affirmative defense, and to overcome the presumption against suicide, but there is evidence having a tendency to show that the assured did not commit suicide. And under the circumstances it was for the jury to determine what effect should be given to any statements in the nature of admissions contained in the proofs of death. [See Bamberge v. Tribe of Ben Hur, supra; Bruck v. Life Ins. Co., supra.]

We think the court did not err in refusing to take the case from the jury.

The giving of an instruction for plaintiffs, plaintiffs' instruction No. 1, is assigned as error, upon the ground that the instruction, among other things, told the jury that the burden of proving that the insured died by his own hand was upon the defendant, and that in determining the matter the jury "should not speculate or guess as to whether or not he did die by his own hand," but unless defendant had proved to the satisfaction of the jury by a preponderance of the evidence that the assured did die by his own hand, then the verdict should be for plaintiffs.

It is argued that the instruction, though apparently telling the jury not to indulge in speculation and conjecture, was in fact an invitation to them to do that very thing. We think the matter need not be discussed at length, for we regard it as entirely clear that the instruction could not have had the effect of leading the jury into the realm of speculation and conjecture. The situation presented is unlike that which was present in Peperkorn v. Transfer Co., 171 Mo. App. 709, 154 S. W. 836, where we said that the instruction under consideration was properly refused. And we think that the decision in State ex rel. v. Ellison, 268 Mo. 239, 187 S. W. 23, is here without application.

It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.